FLOYD ROBINSON, *et al. v.* BOARD OF SUPERVISORS,
ITAWAMBA COUNTY.

[62 South. 3.]

1. MANDAMUS. *Grounds. Remedy by appeal. Acts of supervisors. Discretion. Acts 1910, chapter 149. Code 1906, sections 80-3231.*

The road commissioners of a county cannot sustain a writ of mandamus to compel the board of supervisors to issue and sell bonds for the construction of roads in a supervisor's district, under the provisions of Laws 1910, chapter 149, since under Code 1906, section 80 an appeal is provided from the decision of the board of supervisors to the circuit court, and under section 3231 of the Code a writ of mandamus can only be issued where there is no plain, speedy and adequate remedy in the ordinary course of law.

2. MANDAMUS. *Board of Supervisors. Discretion. Laws 1910, chapter 149.*

Under chapter 149, Laws 1910 providing for the issuance of bonds by the board of supervisors for the construction of roads, the board has a right to exercise its discretion as to whether or not it will issue bonds, and while mandamus may be invoked to compel the exercise of discretion, it cannot compel the exercise of such discretion in any particular way.

APPEAL from the circuit court of Itawamba county.
HON. CLAUD CLAYTON, Judge.

Mandamus by Floyd Robinson, and others, against the Board of Supervisors of Ittawamba county.    From a judgment for defendant, plaintiff appeals.

The facts are fully stated in the opinion of the court

*Wiley H. Clifton,* for appellant.

The contention by appellee will be that, in all that the board did, only matters of discretion were involved, and that the discretion of the board cannot be controlled by mandamus.    That if the board committed the error in

refusing to amend its judgment the way to correct such error was by appeal and not mandamus.

That in the exercise of its full jurisdiction over roads the law vests in the board a discretion as to when, in such proceedings, the bonds should be issued and sold. That in this case the board had acted, and in acting has only decided that now was not a proper time to issue and sell the bonds of this road district. And by this decision they only exercised the discretion which the law vests in them and we are here asking the court to control that discretion.

We submit that appellees' contention on the merits that these bonds are void is a complete answer to this technical objection that we have resorted to the wrong remedy.

For if the bonds are not void then clearly we are entitled to the writ; unless the board has the right to indefinitely postpone the issuance and sale of the bonds. If the bonds are void then, we are entitled to the writ to compel the board to proceed with the issuance of a good series of bonds and their sale, for the same reason.

So the question finally reverts back to whether the board can in its discretion postpone indefinitely the issuance and sale of these bonds. We will be cited to the case of *Weston* v. *Hancock Co.*, 98 Miss. 800; 54 So. 307 as an authority for this contention. The facts in *Weston's case* material to this question are, that on a bill filed to enjoin the board from the sale of bonds under chapter 150, Acts 1910, the validity of the bonds were attacked on the ground that the board instead of issuing the bonds at the August meeting, it being the meeting to which notice of intention to issue the bonds were returnable, they issued the bonds at the September meeting next thereafter. So it will be seen it was a delay of only one month. In passing on this state of facts the court says, ''If it be asked how long after this publication may the board continue to leave open the issuance of the

bonds, and at what time this right expires, our answer is, the board may thereafter act at discretion. Powers of government must reside somewhere, and those in power must be trusted to carry out the powers entrusted to them in good faith and for the best interest of those whom they represent." This, the fourth district was brought under operation of chapter 149, Acts 1910 at the June meeting, 1911, of the board; at December term, 1911, these bonds were issued, and it was the February term, 1913, when the board refused to offer these bonds for sale, or to take any steps towards issuing other bonds.

Six months from the return term or earliest time in which they could have been issued, until they were actually issued, and fourteen months after issuance when the board refuses to advertise and sell the bonds. And if they are void twenty months from the return term when the board refuses to issue other bonds, or "make any order whatever in the case." I hardly think that it could be contended that the board acted in good faith with us; but before I pass to this matter of good faith, I want to call the court's attention to another point decided in this *Weston case* in the next sentence following the excerpt copied. 34 So. 310.

"So far as the taxpayers are concerned when he fails to protest, the bonds then have a potential existence beyond revocation so far as they are concerned."

That is the judgment of the board granting the petition which brings the district under the provision of chapter 149, Acts 1910, is final and conclusive on the taxpayer; provided the initial petition contains the jurisdictional facts; the notice is properly given, and the counter-petition filed against the issuance of the bonds does not contain twenty per cent of the qualified voters, all which is shown in this case. It is not only conclusive on the taxpayer, but it is a judgment which binds the board at its successive meetings and succeeding boards, and that cannot be attacked collaterally.

And yet if the board of supervisors be clothed with a discretion to indefinitely postpone the issuance and sale of bonds that have potential existence, that have been created by a judgment of the board that is even binding on it, then such discretion is greater than the powers and jurisdiction of the board. I don't think this dictum of Judge MAYES can be distorted into adding any such powers to a board of supervisors, which is a court of limited and special jurisdiction. This court decided in the *Bookout case* that where all subsequent proceedings to the initial petition were void the board had the power and discretion on a petition signed by a majority of the voters of the district to dismiss the initial petition without referring it to a vote of the district. But in this case the district has been properly and legally made a good road district, which gives the bonds a potential existence, whether issued or not; and neither the taxpayer nor the board and taxpayer can revoke or set aside the proceedings when they have reached this point.

There is no discretion involved at this point, only plain duty imposed on the board by statute, and having refused to perform this duty can be made to do so by mandamus. *Monroe Co.* v. *State*, 63 Miss. 135; *Harris* v. *State*, 72 Miss. 963 (18 So. 387); *Arthur* v. *Adams*, 49 Miss. 404. But it will be said that the board acted on the proposition before it, and not satisfied with that action we are now seeking to compel the board by mandamus to decide our way.

If the bonds were valid, or if the proceedings can be amended and the bonds made valid, then the mandamus will compel the board to sell the bonds. If the present bond issue be void, still the bonds have a potential existence and the board the power to issue a new series; in which case the mandamus will compel the board to issue and sell the bonds.

The duty in the first case imposed by the statute on the board is still the bonds; in the second case to issue and

sell the bonds. Both ministerial duties involving no discretion; and required to be performed by the statute. This same question was thrashed out in the *Bookout case;* and the court took no notice of the appeal or *certiorari,* but held that mandamus was the proper remedy.

But even if there was a discretion in the board to postpone the issuance and sale of such bonds for the purpose of conserving the interest of the public; the board could not interpose such a defense when it was shown that it was a mere subterfuge. and not done in good faith.

There is nothing in the record to show that the board at any time believed that it would be against the interest of this district to incur this bonded indebtedness for purposes of maintaining good roads in the district. If they had thought it was against public interest, we believe that this board would have set it out in its records. The record does show that the etsimated cost of the roads laid out in the district was twenty-four thousand, one hundred and ninety-four dollars and sixty-one cents, and this expenditure of money would give them twenty-seven and one-half miles of good roads in the district at a cost of less than nine hundred dollars per mile. With a twenty-one thousand dollar bond issue this twenty-seven and one-half miles of good roads could probably all have been built; the clay or sand to be used in the fills being all along the roadway. A study of the specifications and plans will show that the road, as located, was accessible to the people of the district; and that the improvement was a necessity and altogether practical and feasible.

This clearly shows that there was no question of public interest that influenced the board to delay for twenty months the issuance and sale of these bonds; and their final action in wiping their hands of the whole proceedings and incorporating in their final order a "refusal to make any further orders in the case" shows that these delays were for the sole purpose of defeating this bond

issue. There is no proposition or suggestion in this case to dismiss the proceedings through a petition of the legal voters of the district, as there was in the *Bookout case*. And, if there was, these bonds have a legal potential existence and the board of supervisors, even on such a petition as was filed in the *Bookout case,* could not dismiss these proceedings. And yet the board of supervisors have attempted to do on their own initiative, through the guise of exercising a discretion for protection of a public interest, indirectly what they did not have the power and jurisdiction to do directly; what they and the people of the district could not do. And when the record shows that they have deliberately attempted by delays and postponements of action to avoid or evade the discharge of a plain duty, the plea that all this was but the exercise of a discretion and that mandamus would not lie though good as a general proposition would not be applicable here because of the bad faith shown. Nor is it an answer to say that the correction lay in an appeal, for the concurrent remedy must be as efficient and speedy, otherwise mandamus will lie.

We insist though, in conclusion, that this is a case where the statute imposes on this board a plain duty, and having refused to perform that duty imposed by law, mandamus will compel them to go forward and either sell the bonds, provided the present issue is valid, or if the present issue of bonds be void, will compel the board to issue and sell the bonds.

That the bonds have a potential valid existence, and they will be compelled to discharge a ministerial duty necessary to complete and execute the issuance and sale of the said bonds.

*Anderson & Long,* for appellee.

An inferior tribunal, which is invested with discretion as to its acts, may be compelled by mandamus, to act, but cannot be controlled as to the manner of the exercise of its discretion.

It seems hardly necessary to cite authorities to sustain this proposition. However, reference is made to the following: *Vicksburg* v. *Rainwater*, 47 Miss. 547; *Board of Education* v. *West Point*, 50 Miss. 638; *Attala Co.* v. *Grant*, 9 S. & M. 77.; *Swan* v. *Gray*, 44 Miss. 393.

Conceding for the purpose of the argument therefore, that in putting into force this road law, the board was acting judicially, mandamus cannot be sustained. It is thereby sought to command the board as to what kind of a judgment it shall enter. The court will bear in mind, that an order had already been entered, vacating and dismissing the proceedings by which it had been sought to incorporate the Fifth district into a road district. In other words, the board had acted; then this mandamus proceeding was instituted for the purpose of compelling this board to act again and in a differnet manner from what it had already acted. The prayer to the petition for mandamus asks that the board be commanded: "To appear and show cause why writ of mandamus should not issue to compel them to proceed with the issuance and sale of the bonds of said district."

Even though the board had acted erroneously in setting aside and dismissing the Fifth district proceedings, the remedy was not by mandamus. Mandamus is only for the purpose of compelling action and cannot be used for the purpose of forcing any particular line of action.

Reed, J., delivered the opinion of the court.

The road commissioners of the Fourth supervisor's district of Itawamba county presented their petition to the circuit court, asking for a writ of mandamus to compel the board of supervisors of that county to proceed with the issuance and sale of certain road bonds. A demurrer was filed to the petition, which was sustained, and the petition dismissed. From this action of the trial court this appeal was taken by the commissioners.

At the May term, 1911, a petition was presented to the board of supervisors of Itawamba county, which con-

tained the names of twenty per cent. of the qualified elect-
ors of the Fourth supervisor's district, asking that the
district be permitted to come under the provisions of
chapter 149 of the Laws of 1910, authorizing boards to
construct and maintain public roads in any district of a
county. This petition prayed for the issuance of bonds
for the purpose of raising funds to build the roads in
the sum of nineteen thousand, seven hundred and fifty
dollars. The petition was granted, and publication made
as required by law. At the November term, 1911, upon
the recommendation of the road commisisoners, who had
theretofore been appointed, the board made an order pro-
viding for the issuance of bonds in the sum of twenty-
one thousand, eighty dollars and forty-seven cents. At
a subsequent meeting of the board another order was
issued, which stated the terms and conditions of the
bonds to be issued, provided for their sale, and fixed
the amount of the bonds to be sold at twenty-one.thou-
sand dollars. An unsuccessful effort was made to sell
the bonds. At the October, 1912, meeting of the board,
the road commissioners asked that the amount of the
bonds to be issued be changed from twenty-one thousand,
eighty dollars and forty-seven cents to nineteen thou-
sand, seven hundred and fifty dollars, stating in the
petition, that they understood that an issuance of bonds
in excess of the last-named amount would be void.
The board would not make the order asked for, and
at its February meeting, 1913, entered an order re-
jecting the petition of the commissioners and refusing
to make any further order in the matter. The action of
the board in making the last order was the foundation for
the petition for writ of mandamus, filed by the road com-
missioners.

In the demurrer filed by appellee it is claimed that
the extraordinary remedy of mandamus does not lie in
the present case, and that an ample remedy for what-
ever rights they had was afforded appellants by an ap-

peal to the circuit court. This is sufficient ground to sustain the demurrer in this case. Section 3231 of the Code of 1906 provides that a "writ of mandamus shall be issued by the circuit court, commanding any inferior tribunal, corporation, board, officer, or person to do or not to do an act the performance or omission of which the law specially enjoins as a duty resulting from an office, trust, or station, where there is not a plain, adequate, and speedy remedy in the ordinary course of law." Under section 80 of the Code of 1906 an appeal may be taken from a decision of the board of supervisors to the circuit court, where the case, as presented by a bill of exceptions provided for, shall be heard and determined, and the judgment of the board shall be affirmed or reversed, and, if reversed, the court shall render such judgment as the board ought to have rendered. There is therefore provided in the statutes of this state "a plain, adequate, and speedy remedy in the ordinary course of law" for such cases as the one before us. In the case of *State Board of Education* v. *City of West Point,* 50 Miss. 638, it was decided that the writ of mandamus should not be issued in any case where there was a plain, speedy, and adequate remedy in the ordinary course of law; that, being regarded as one of the highest writs known to our jurisprudence, it can only be invoked when there is a clear and specific right and duty which can be performed, and there is no other speedy and adequate remedy.

In the same case it was held that, where a discretion is left to an inferior tribunal, the writ of mandamus cannot control this discretion. There is certainly a discretion left to the board of supervisors in the proceedings in this case. In 26 Cyc. 158, it is stated that "mandamus will not lie to control or review the exercise of the discretion of any court, board, or officer when the act complained of is either judicial or *quasi*-judicial. And while mandamus may be invoked to compel the exercise of dis-

cretion, it cannot compel such discretion to be exercised in any particular way." In the same volume, on page 168, it is stated that the writ of mandamus will lie "only in cases of last necessity and where the usual forms of procedure are powerless to afford relief—where there is no other clear, adequate, efficient, and speedy remedy." In the case of *McHenry* v. *State,* 91 Miss. 562, 44 South. 831, 16 L. R. A. (N. S.) 1062, it was held that mandamus was an extraordinary writ, and ought not to be resorted to where the purpose sought to be accomplished can otherwise reasonably be accomplished.

The trial court was correct in sustaining the demurrer and dismissing the petition, and the case is therefore affirmed.

*Affirmed.*