## EX PARTE ETHEL PARKER.

### [48 South. 297.]

CRIMINAL LAW AND PROCEDURE. *Punishment. County contract for working prisoners. Misdemeanant. Failure to pay fine and costs.*

A convicted misdemeanant, failing to pay the fine and costs imposed on him, must remain in jail, if the county has made no provision for the working of convicts, and the want of such provision does not entitle him to his liberty.

FROM the judgment of Chancellor, the HON. ISAAC T. BLOUNT, on habeas corpus, sitting at Pittsboro, Calhoun county.

Parker, appellant, was convicted of a misdemeanor in the circuit court of Calhoun county, was fined and sentenced to jail until the fine and all costs of the prosecution were paid. Failing to pay the fine or costs he was imprisoned in the jail of the county. Thereupon he petitioned Chancellor BLOUNT for a writ of *habeas corpus,* claiming that his imprisonment was illegal because the county had not provided for the working of convicts in any of the modes provided by law. Laws 1908, ch. 109, p. 104.

The chancellor heard the application, but remanded the applicant to jail, and the prisoner appealed to the supreme court.

*J. L. Bates,* for appellant.

The court is aware of the facts that prior to the meeting of the legislature of 1909 there was much public discussion as to what should be done with the county convicts and all agreed that the state should get them from under the control of county convict contractors and put them under the official control and management of the board of supervisors of the various counties. As we understand the act of the legislature of 1908 on the subject, it became the imperative duty of the board to do one of the many things therein provided, either work the county con-

victs on a farm or farms, or on the public roads, or some other work of a public character, or in conjunction with a neighboring county on a farm or farms, or the board might order that all county convicts be confined in the county jail. It is certain that Calhoun county made no provision of any kind as to the working of the convicts on a farm or farms or on the public roads or any other public work of a public character, nor did it order the convicts to be confined in the county jail. If it was the imperative duty of the county to adopt one of the above plans for the working of county convicts and it failed to do so, can it be said that the relator must suffer for the criminal negligence of the county? Who is to blame? Must the helpless suffer for the neglect of a county? It was certainly the intent of the act of the legislature to put the official control and management of the county convicts under the board of supervisors of each county.

*George Butler*, assistant attorney-general, for the state.

Until the board of supervisors assumed jurisdiction of the convicts as provided in the act, they were to remain in the county jail. Section 4 of the Act of 1908 provides that the supervisors of the several counties may dispose of the county prisoners, etc. We think the case is too clear for argument.

FLETCHER, J., delivered the opinion of the court.

This relator, being convicted of a misdemeanor in the circuit court of Calhoun county, was sentenced to pay a fine and costs, and in default thereof to remain in the county jail.

It appears that the board of supervisors of Calhoun county has never undertaken to provide for the working of the county convicts in any of the modes provided by law; has made no order whatever on the subject of disposing of these convicts. Relator insists that he is entitled to his liberty because no such order has been made. We cannot so hold. In the absence of

any action by the board, the defaulting misdemeanant must remain in jail. We agree with the chancellor, that if any error has been committed, it was in favor of the relator, and of this he cannot complain.                               *Affirmed.*

