PRATHER *v.* GOOGE.

[67 South. 156.]

1. HIGHWAYS. *Highway. Laws. Validity. Constitutional law. Coun-
ties. Due process of law. Highway bonds. Districts. Statutes.
Road districts. Construction. Intent of legislature.*

Section 170 of the Constitution of 1890, provides that each county
·shall be divided into five districts, for the election of the board
of supervisors, which shall have full jurisdiction over roads and
bridges. Laws of 1914, chapter 176, section I, provides that the
board of supervisors of any county may construct and maintain
highways in one or more supervisors' districts, or part of one
or more districts, and for that purpose may issue and sell bonds,

and levy and collect taxes to pay bonds, issued to construct and
maintain such highways.  Section 3 of said act provides that the
returns of. elections for the issuance of bonds shall be controlled
by the election commissioners, and the result certified to the
board of supervisors; that, should the election be carried in favor
of the issuance of bonds, the supervisors shall issue bonds not
to exceed ten per cent. of the assessed value of the taxable prop-
erty of the district.  This act does not violate the constitution
by depriving the board of supervisors of the general jurisdiction
over highways; the board, having complete jurisdiction over
highways, notwithstanding the act, authorized the construction
of highways in parts only of a supervisors' district.

2. CONSTITUTIONAL LAW.  *Counties.  Due process of law.  Highway
      bonds.*
   Laws 1914, chapter 176, is not in violation of the due process clause
      of the Federal Constitution, "in that no proper method is pro-
      vided for ascertaining the will of the qualified voters or prop-
      erty owners in that non-resident property owners are allowed
      no participation in the election or petition," as it was not neces-
      sary to the constitutionality of the act that either qualified
      electors or property owners, resident or non-resident, should be
      consulted, and there is nothing in the act which discriminates
      between resident or non-resident property owners.

3. HIGHWAYS.  *Highway districts.  Laws.*
   Laws 1914, chapter 176, authorizing the formation of road dis-
      tricts is not impracticable as not providing for the ascertaining
      of the will of the electors, since the elector must reside in the
      proposed district before he can vote, and there is no reason why
      his qualifications could not be definitely and certainly ascer-
      tained.

4. COUNTIES.  *Bonds.  Road districts.  Statutes.*
   While section 3, chapter 176, Laws 1914, does not expressly pro-
      vide that bonds issued by a road district, less than a supervisors'
      district, shall be a lien only on the property within the district,
      yet the plain intent of the legislature as shown by section 1
      being that highways may be laid out in a portion of a super-
      visors' district, bonds issued where the road district was less
      than a whole district, will be treated as bonds of the board of
      supervisors, but liens only upon the property within the road
      district.

5. STATUTES.  *Construction.  Legislative intent.*
   In constructing a statute, effect will be given to the legislative in-
      tent if possible.

APPEAL from the chancery court of Prentiss county. HON. T. L. LAMB, Chancellor.

Bill by Forest Prather against J. D. Googe, sheriff, and tax collector. From a decree for defendant, plaintiff appeals.

The facts are fully stated in the opinion of the court.

*Robins & Thomas, J. A. Cunningham* and *Jas. R. McDowell,* of counsel for appellant.

Appellant filed his bill in the chancery court of Prentiss county and obtained an injunction against the sheriff of said county and the board of supervisors and the road commissioners of road district No. 1, of the third supervisors' district of Prentiss county, enjoining the collection of a special road tax assessed and levied on appellant's property in said district.

A demurrer was interposed to this bill on many grounds, and a motion was made to dissolve the injunction. This demurrer and motion were heard by consent of the chancellor in vacation. He sustained the demurrer, and the complainant declining to amend dissolved the injunction and dismissed the bill. This appeal is prosecuted for the purpose of testing the soundness of the chancellor's holdings and decree.

The bonds to pay the interest on which the taxes were levied were issued under what is known as the Anderson Act, a statute which gets its name from the distinguished gentleman who introduced the bill in the legislature, Judge W. D. Anderson. The original Act is found in the Acts of 1910, chapter 149, page 140. The constitutionality of this Act was attacked in the case of *Thomas* v. *Lee County,* and on appeal from the chancery court of Lee county the constitutionality of the Act was upheld. See *Thomas* v. *Lee County,* 98 Miss. 232.

The Act was amended in 1912, chapter 145, page 149, then again in 1914, the Act on which the bonds of this particular case were issued was passed, namely chapter 176, Laws of 1914, page 242. This Act of 1914 authorizes a part of a supervisors' district to be created and organized into a separate road district.

The district in controversy was created under this Act, and we frankly state to the court that so far as we have been able to discover and we have examined the record carefully, the proceeding entirely conforms to the statute, and we see no errors in the proceeding. At the session of the legislature of 1914 not only was this particular road law, chapter 176, passed by the legislature, but quite a number of other road laws were also, and there is more or less confusion in our road laws by reason of the large number of separate road bills that were passed by the last legislature.

The bond issue in this particular district was submitted to some bond attorneys for approval, and they declined to approve the bonds on account of the confusion in the laws of our state, which made it necessary to bring a test case to this court to determine the validity of the bonds in question. The original bill sets out specifically all the objections that could be brought against these bonds. Some of the objections may appear to the court as frivolous, and at the beginning of the consideration of the case we wish to say that they are largely framed and based on the objections made by the bond attorneys. We cannot add much to what was said in the original bill to the objections to this road legislation; we will only undertake to call the court's attention to a few of the stronger objections to the statute.

Sections 1 and 2 of the statute, chapter 176, seem to authorize the creation of a road district, which was not so large as a supervisors' district which was contem-

plated under the original Anderson Act, but only a part of a supervisors' district; how small a part, seems to be left entirely with the people of the district and the board of supervisors. Section 3 of the Act when it comes to authorizing the issuance of bonds, fails to carry forward the amended scheme of providing that the bonds could be issued for a part of a district, but in direct terms says that the board of supervisors may issue bonds of such supervisors' district; in other words, in amending the Act, the amendatory part is not carried into section 3.

This chapter 176 provides no adequate and practical means for ascertaining the will of such specially created districts, for it is well known that the borders of a supervisors' district are not crossed by election precincts in any supervisors' district. Now the Act does not require that the road district shall conform to the election district, nor does it make any provision for the board of supervisors providing special arrangements for ascertaining the expression of the electors in the special election by creating special election districts conforming to the special road district boundaries; in other words, the voters may be registered in several precincts, and no method is provided for ascertaining which voters reside in the special road district; the precinct at which the voter has a right to express his opinion and that in which he is registered may be outside of the road district, and yet the voter reside inside the road district. How are you going to ascertain his will, or his preference?

Section 11 of the Act undertakes to provide that Districts that have been created and taxed shall not be put into another district and compelled to pay another tax without the consent of the qualified electors of such district, but it provides no practical means for ascertaining such consent of the qualified electors.

Chapter 176 provides for a general *ad valorem* tax on the property in the specially created road district, for the purpose of building and maintaining roads and paying the interest on the bonds; under chapter 173, passed by the same session of the legislature, an entirely different and inconsistent scheme is provided for building roads on a benefit tax assessment. The two schemes are not only incongruous but absolutely antagonistic.

Chapter 174 adds to the confusion by providing another method for creating road districts; so does 175. These several acts have so confused matters that it seems to be impossible to determine what is the road law, and makes such confusion that none of us "know where we are at;" we, therefore, hope and trust that the court will clarify this subject by telling us what the road law is, so that the people who desire good roads, and the purchasers of bonds for their construction and maintenance may know, really and truly, how to proceed and what to do.

*Cox & Cox,* for appellee.

The most serious objection to the validity of the bond issue in this case is that raised by the third special objection in the bill of complaint. We concede that the third section, chapter 176, makes it the duty of the board of supervisors to issue the bonds of "such supervisors' district or districts," and that it does not, in so many words, expressly direct the issuance of bonds of a part of a supervisors' district when organized into a road district as provided in section 1, of the Act.

It does not follow, however, that under the act in question the board is not empowered and directed to issue the bonds of any district created out of a part of one supervisors' district, or two or more parts of districts; on the contrary it is quite clear from the Act that the legislative intent was that the board issue the

bonds of whatever road district might be created under the Act.

Chapter 176 of the Laws of 1914, is the reinactment, with amendments, of chapter 149 of the Laws of 1910, as said chapter had been amended and reinacted in chapter 145 of the Acts of 1912. Prior to 1914 the statute had provided for the creation of road districts composed of all the territory in an entire supervisors' district, or in two or more supervisors' districts, or in one district and parts of one or more district. The scheme involved the issuance and sale of bonds of the road district so created, and the use of the moneys arising from the sale of such bonds in the construction of good roads, the said bonds and the interest thereon to be paid out of a tax levied upon all taxable property in the territory constituting the road district. The issuance and sale of bonds of the road district was an indispensable part of said legislative scheme, without which the entire statute was rendered nugatory and utterly failed of its purpose.

Chapter 176 so amended the statute as to apply its scheme to territory smaller in its extent than a supervisors' district. This appears from section 1 of the chapter which provides: "That the board of supervisors of any county in this state are hereby authorized and empowered to construct, or construct and maintain, or maintain one or more highways for the convenience of the traveling public, by contract in one or more supervisors' district of said county, or part of one supervisors' district or two or more, or parts of two or more supervisors' districts, in such county, and for that purpose are authorized to issue and sell bonds, and to levy and collect taxes to pay such bonds, and to maintain such roads so constructed in the manner herein provided."

This section unmistakably authorizes the construction of roads in a part of a supervisors' district and the is-

suance and sale of bonds for that purpose. If it does not do this, then it is impossible to assign any meaning to the amendatory words "or part of one supervisors' district." It is difficult, if not impossible, to believe that the legislature intended that the board, in carrying out the legislative scheme, in case of territory less than an entire supervisors' district should not issue bonds at all, on the one hand, or should issue the bonds of the entire supervisors' district, on the other. The first would be a practical impossibility; the latter a legal impossibility and absurdity; and yet it is contended, because section 3, of the Act does not in so many words direct the issuance of the bonds of a district less than a supervisors' district, that the board has no authority to issue such bonds, and that the entire scheme and purpose of the enactment has utterly failed.

The principles of construction applicable to this question are not difficult, and are thoroughly settled. "An amendment is to be construed as incorporated in the original act and as a part thereof; the provisions of the two are, if possible to be harmonized, and no clause of either is to be left inoperative." "The old law must be considered by the mischief, inconveniences or hardships produced by it; and then the remedy proposed by the amendatory law." 26 Am. & Eng. Ency., 712, 713, notes 1 and 2, p. 8. "The intent of the legislature is the primary object in the construction of all statutes, including amendatory Acts." 26 Am. and Eng. Ency., 712.

Where it is manifest upon the face of an act that an error has been made in the use of words, the court may correct the error and read the statute as corrected, in order to give effect to the obvious intention of the legislature." 26 Am. and Eng. Ency, 653 and 655. To support the foregoing general proposition we cite the court to the following cases: *The United States* v. *Freeman,* 3 Howard (U. S.), 2 Law Ed., 564; *United*

*States* v. *Babbitt*, 1 Black (U. S.), 55, 17 Law 94; *Adkins* v. *The Fiber Disintegrating Company*, 18 Wall (U. S.), 272, 21 Law 841; *Heydenfelt* v. *The Daney G. & S. Mng. Co.*, 93 U. S. (23 Law Ed), 995; *Kohlsaat* v. *Murphy*, 96 (U. S.) 153, 24 Law 844; *Beriner* v. *Bernier*, 147 (U. S.) 242, 37 Law 152; *The City of Birmingham* v. *The Sou. Express Company*, 51 So. 162; *Bonds* v. *Grier*, 56 Miss. 716; *Browns* v. *The Pittsburg Life and Trust Company*, 65 So. 700; *Gibbons* v. *Britteunum* (Judge Campbell's opinion), 56 Miss, 266; *Earhart* v. *The State*, 67 Miss. 327; *Board of Education* v. *Mobile & Ohio Railroad Co.*, 72 Miss. 238; *Bobo* v. *The Levee Commissioners* (Miss.) 46 So. 823; *Ray* v. *Kelly*, (Miss.) 53 So. 493; *State* v. *Rawls* (Miss.), 60 So. 782; *Kennington* v. *Hemingway* (Miss.), 57 So. 811; *State* v. *Ware* (Miss.), 59 So. 855; *Henderson* v. *Blair* (Miss.), 59 So. 857; *Holly Springs* v. *Marshall County* (Miss.), 61 So. 705.

Some doubt is attempted to be cast upon the power of the board of supervisors to issue the bonds of a district, less than, or differing in its area and boundaries from a supervisors' district, because first it does not make such a taxing district, and second, because it is not clear whether a district so constituted be a taxing district or a district without taxing power.

We must confess that we have not been able to satisfy our own mind that we fully comprehend the legal significance of this objection. If by taxing district is meant a district having the power, in and for itself, through its own agencies and officers, and by its own authority, to levy and collect taxes, it must be admitted that no such district is contemplated by the amendment.

Indeed the creation of such a district for the construction of roads would be a palpable violation of our constitution, which section 170 commits to the board of supervisors full jurisdiction over roads. Neither the

legislature nor the board of supervisors can transfer this juridiction to a taxing district.

If by taxing district is meant a district so defined and limited as to make the collection of taxes on the taxable property therein easy and practicable, we reply that this is as feasible in the half of a supervisors' district as in a whole one. There is no special charm or magic in the name or in the area or boundaries of a supervisors' district. A supervisors' district is in no proper legal sense a taxing district. No reason is shown why a road district, however constituted, should be a taxing district; and none such can or will be shown.

If there is any merit whatever in the objection, it applies with full force to the Act of 1910, for that Act provided for a district to be composed of one supervisors' district and a part of another, and it must not be forgotten that the Act of 1910 has been by this court declared to be free from constitutional objections.

CODK, J., delivered the opinion of the court.

Appellant, a taxpayer, filed his bill of complaint against the board of supervisors, the sheriff and tax collector, and the road commissioners of road district No. 1 for the third supervisors' district of Prentiss county.

The purpose of the litigation is to test the validity of chapter 176, Laws of 1914, entitled:

"An act to amend chapter 145, of the Laws of 1912 entitled 'An act to amend chapter 149, Acts of 1910, entitled "An act to authorize the board of supervisors to construct and maintain the public roads in one or more supervisors' districts of the various counties of the state, to issue bonds and levy taxes for that purpose; and providing for the manner in which the said roads shall be constructed and maintained; and how bonds shall be issued and taxes levied for that

purpose,'' so as to provide that the board of super-
visors of any county in which one or more supervisors'
districts, or parts of districts, which have or may come
under the operation of said chapter 149 of the Acts
of 1910, may elect, by an order on its minutes to that
effect, to work all of the public roads in such district
or districts, or parts of districts, by contract, and to
provide the manner in which the same shall be done,'
so as to provide for maintenance and upkeep of roads
by other methods than by contract,'' etc.

The bill sets out in detail the proceedings leading
up to the establishment or creation of the road district
in question, and it appears that the procedure was
in strict compliance with the provisions of chapter 176,
Laws of 1914, and that the district is composed of cer-
tain described lands in the third supervisors' district
of Prentiss county, but does not embrace the entire dis-
trict. The area embraced in and composing the pro-
posed district is less than the area of the supervisors'
district.

The prayer of the bill is as follows:

''The premises considered, complainant prays that
he be granted your most gracious writ of injunction to
restrain and enjoin said sheriff and tax collector of
Prentiss county, and said board of supervisors, and
the said road commissioners of said district No. 1 of the
third supervisors' district of Prentiss county, from im-
posing or collecting said road tax on his property in
said proposed road district and that the said sheriff
and tax collector, and the said board of supervisors
and the said road commissioners be made parties de-
fendant to this bill by fit and apt process, returnable
to the next term thereof, and that on final hearing said
injunction shall be made perpetual, and for such other,
further, and different relief as to the court may seem
meet and proper, and as in duty bound will ever pray.''

The grounds for relief are thus stated in the bill of
complaint, viz.:

"He assigns now the following special objections, as well as those appearing on the face of the proceedings, and papers against the organization and creation of said road district, the levy and assessment and proposed collection of said tax, to-wit:

"First.   Said chapter 176, House Bill No. 750, attempting to authorize the creation of road district of part of supervisors' districts, is unconstitutional and void.

"Second.   The said act, chapter 176, House Bill No. 750, Laws of 1914, p. 244, does not authorize the creation and organization of a road district less than one supervisors' district.

"Third.   The third section of said act, chapter 176, wherein the board of supervisors are authorized to issue the bonds, only authorizes the board of supervisors to issue bonds of a supervisors' district, or districts, and does *not* authorize the issuance of bonds on parts of a district, or districts.   The said act, chapter 176 was an act amendatory of the Laws of 1910, known as chapter 149, and whereas sections 1 and 2 of said act authorized, or attempted to authorize, the board of supervisors to create districts smaller than one supervisors' district, being in that respect amendatory of the former law, yet in carrying this forward in section 3 of said act, it directed that the levy should be made upon the supervisors' district, or districts, thus levying the tax on the whole of a district for the benefit of a part only.   Said act, chapter 176, is impractical and impossible in so far as it attempts to create a smaller district than one supervisors' district, and is for that reason void.

"Fourth.    If the legislature intended to authorize the creation of a road district as small as this proposed district, the act does not clearly express the legislative intent, and is so vague and indefinite as not to be capable of enforcement.

"Fifth. Said act is impractical of enforcement and will work irremediable injury and damage, in that it proposes to create districts smaller than a supervisors' district into road districts without providing any practical means for ascertaining whether or not the residents of said proposed district shall be provided with proper voting precints in the proposed district to express their views for or against the issuance of bonds. Said act in no part of it requiring that the said proposed road district shall conform to the already laid out precinct voting places, so the said chapter 176, Acts of 1914, is impractical of administration, and no proper method is provided for ascertaining the correct expression of the qualified voters in said proposed road district.

"Sixth. Said act, chapter 176, contravenes the general policy of our state in the creation of taxing districts, in that qualified electors, regardless of ownership of property, participate in the election, and thus there may be property owners in said district, who, under the provisions of said act, will be taxed without giving them the opportunity to express their preference for or against said bonds.

"Seventh. Said chapter 176, in its effort to amend the laws of 1912, is so cumbersomely worded as to fail entirely to convey the legislative intent, and throughout it fails to give complete efficacy to the amendment proposed in sections 1 and 2, where it attempts to broaden the act, so as to make it include less than one supervisors' district, and leaves the law in such a state of doubt and uncertainty that no bond issue under it can be sold and would not be valid or binding.

"Eighth. Said act, chapter 176, in section 11 thereof, attempts to provide a means of preventing property owners in districts from paying a double tax by being put into two or more road districts, but provides no practical means for carrying out this proposed idea, and thus leaves the law in confusion and uncertainty.

"Ninth. No practical method of assessment and administration of the funds is provided for in said act, and hence there will be interminable confusion in an attempt to administer the law under this act.

"Tenth. The legislature of the state, in passing so many road laws, especially chapter 173 of the Acts of 1914, 174, 175, 176, 177, and 178, have left the road laws of the state in such hopeless confusion and conflict as to be hopelessly irreconcilable and nobody can determine what the law is.

"Eleventh. Chapters 173 and 176 contemplate an entirely different and independent and contrary scheme for road building and maintenance, and for issuance of bonds, and are so irreconcilable in their terms and provisions and general scheme and plan as to make it impossible to determine which is effective and in operation, and which is void; the one assessing and laying a regular *ad valorem* tax and the other a benefit tax. There is no satisfactory provision of law preventing the enforcement of these two antagonistic schemes in the same territory, or supervisors' districts, or counties, or parts of districts or county.

"Twelth. The attempt to create districts smaller than one supervisors' district would allow such districts to be organized and created with an irregular perimeter, and thus the sheriff and tax collector and the board of supervisors would not know how to separate the funds from other funds, and it would be impossible, or impractical, for the assessor to assess such districts, and for the collector to collect the taxes in such districts, and for the board of supervisors to administer the funds of said district.

"Thirteenth. Section 3 of the act, chapter 176, is in real and apparent conflict with sections 1 and 2 of the act.

"Fourteenth. Under chapter 176, the effort to tax the small districts and issue the bonds of small districts,

violates the due process clause of the federal constitution, in that no proper method is provided for ascertaining the will of the majority of qualified voters, or property owners, in that nonresident property owners of such districts are allowed no participation in the election or petition, although they may be large taxpayers in the district.

"Fifteenth. Said act of 1914, chapter 176, attempts to create territory not theretofore defined into something of a corporate character, but it is not clear and satisfactory what is intended, or what is created into such corporate character, whether it is a taxing district merely, or a corporation with corporate functions and taxing power.

"Sixteenth. The attempt to create a part of a supervisors' district into a taxing district, or into a district having taxing power, is not clearly and definitely expressed, and such part of a supervisors' district is not by such act created into a separate taxing district, nor into a district having separate taxing powers.

"Seventeenth. The whole subject of road legislation in Mississippi is so hopelessly entangled that it cannot be straightened out without an entire revision and re-enactment of the road laws by the legislature."

The demurrer to this bill was sustained.

Chapter 176, Laws 1914, is an amendment to chapter 145, Laws 1912, which last-named chapter was an amendment of chapter 149, Laws of 1910.

We here copy section 1 of chapter 176, Laws of 1914 (the law under review), and the amending words appear in capital letters, viz.:

"Be it enacted by the legislature of the state of Mississippi, that the board of supervisors of any county in this state are hereby authorized and empowered to construct, or construct and maintain or maintain one or more highways for convenience of the traveling public by contracts in one or more supervisors' districts of

said county, or part of one supervisors' district, or two or more or parts of two or more supervisors' districts in such county, and for that purpose are authorized to issue and sell bonds and to levy and to collect taxes to pay such bonds and to maintain such roads so constructed in the manner herein provided.''

. Section 3 of this act is as follows:

''That the returns of such election shall be canvassed by the election commissioners of the county, and the result certified by the commissioners to the board of supervisors. at their next regular meeting; and should the result of such election show that it has carried in favor of the issuance of bonds by a majority vote of those participating therein, or if there be no election,. then it shall be the duty of the board of supervisors to· issue the bonds of such supervisors' district or districts,. in any amount not to exceed ten per centum of the: assessed value of all the taxable property of such district, or districts, the amount within this limit to be fixed by the commissioners hereinafter provided for, subject to the approval of the board of supervisors, and such bonds to be issued and sold either all at one time or in installments from time to time as funds are needed for the construction of such highway or highways, in the discretion of such commissioners and the board of supervisors.''

It will be observed that section 1 authorizes and empowers boards of supervisors of any county ''to construct, or construct and maintain, or maintain one or more highways .... by contracts in one or more supervisors' districts .... or part of one supervisors' district.''

There seems to be no doubt that the power is given to establish the district in question—to construct and maintain the road which is the subject of this controversy—and we do not understand that appellant seriously contests the grant of power, but does insist

that section 3 of the act does not authorize the issuance of the bonds of a road district, embracing less than a supervisors' district.

It seems to us that the real controversy is narrowed and confined to the issuance of bonds for the proposed district and the levy of taxes on the lands embraced therein to liquidate the bonds. In other words, conceding the power to organize a road district embracing an area less than a supervisors' district, is the power to issue bonds and collect taxes to pay the bonds also given by the act of the legislature?

However, the recent judicial history of this state shows that no money can be secured to prosecute public works of the character here involved, until the approval of this court is stamped upon each bond issue, and for this reason we will undertake the onerous task of considering all the arguments advanced in this case without the faintest hope that any portion of this opinion will be hereafter accepted by would-be investors as applicable to any other bond issue than the one involved in this appeal.

The sixth, fifteenth, and sixteenth criticisms of the statute and grounds for relief are of the same character and will be so considered. They all proceed upon the idea that the legislature has undertaken to create taxing districts or corporations with powers of taxation, or to carve out of a supervisors' district a separate and distinct taxing district with indefinite powers. The vice of this conception is made apparent by a mere reading of the law. The bill is drawn with due regard to the plenary jurisdiction over roads vested in boards of supervisors by section 170 of the state constitution, and this thought runs through every word and phrase of the act. The exercise of the powers given by the act and the carrying out of the scheme is placed where it belongs, in the control and under the jurisdiction of boards of supervisors.

The methods for the construction and maintenance of public roads, and the means through which the funds necessary to this end may be obtained, is a proper subject of legislation, and are without objection, unless they in terms or by necessary implication take away from boards of supervisors the powers conferred by the constitution. Nothing can be found in the act justifying the inference that the legislature was undertaking to confer upon a separate taxing district, or corporate entity, jurisdiction over public roads, or the power to levy taxes upon persons or property. For convenience, and in order to identify the property to be assessed for the purpose of securing funds to liquidate the bonds to be issued, the act provides that boards of supervisors will issue the bonds of the district, upon which the special benefits are conferred. The district gets the benefit of the general plan for working roads, and something more, and this something more is the thing the district is required to pay. Under the plan devised by the legislature, the resident qualified electors are permitted to express their preferences upon the subject of a road district. This was not a necessary, or important feature of the law. The legislature was authorized to confer the discretion of organizing or not organizing the district to boards of supervisors alone.

The first and second ground for relief will be considered together. It is not pointed out wherein the act is unconstitutional, unless the constitutional inhibition referred to may be found in the fourteenth ground for relief. In this ground it is said that the act is in violation of the due process clause of the federal constitution, "in that no proper method is provided for ascertaining the will of the qualified voters, or property owners, in that nonresident property owners .... are allowed no participation in the election or petition." This we think has been answered. It was not necessary

to the constitutionality of the act that either qualified electors or property owners, resident or nonresident, should be consulted.   There is nothing in the act which discriminates between resident or nonresident property owners.

The second ground is without merit, because the first section of the act clearly authorizes the organization of a road district less than one supervisors' district.   There is no merit in the fourth ground.

We can see nothing of merit in the fifth ground.   There seems to have been no difficulty in ascertaining the will of the electors, and it is apparent that the alleged confusion and impracticability of the scheme is purely imaginary.   The elector must reside in the proposed district before he can vote, and there seems to be no reason why his qualifications could not be definitely and certainly ascertained.

The third and seventh grounds are in our opinion, the only grounds to be seriously considered.   It is manifest that the legislature omitted to so amend section 3 as to harmonize same with the general scheme. This was obviously an oversight.   To construe this section literally would result in, a miscarriage of the dominant purpose of the legislature in passing the amendatory act.   We cannot escape the conclusion that experience had demonstrated that it would be frequently desirable to organize districts in certain localities which would not embrace the entire supervisors' district.   Supervisors' districts are not infrequently traversed by streams or swamps which oppose impassable barriers between the part on the one side and the part on the other side of the stream or swamp.   In cases of this kind the construction of a road on one side would be of no earthly use to the people on the other side.   Reasons of this kind, and no doubt many other conceivable reasons, suggested the amendment of section 1, which authorizes districts smaller than supervi-

sors' districts. It was manifestly not the intention of the legislature to confer a power without also providing the means for making it effectual.

It being clear that the legislature intended to amend the act in the particular mentioned the court should not nullify the purpose, if there are any sound rules of construction by which we can enforce the evident intention of the lawmaking department  The bonds are the bonds of the board of supervisors, but the property within the road district is the security for their payment. The county authorities supervise and issue the bonds, and the security for their payment is the taxing power of the government to be exerted on the property peculiarly benefited by the special improvement. A reading of the entire chapter leads to the inevitable conclusion that it was the intention of the legislature to provide a means by which the inhabitants of a district less than a supervisors' district would be enabled to secure for themselves a ready and convenient means of transportation which would improve the moral, financial and social condition of the community, and to accomplish this end it seems reasonably certain that the legislature intended to give to the community the right to borrow money and to provide means by which the payment of the creditor could be insured. Any other construction would nullify the amendment.

The criticisms of the administrative features of the act are without merit or foundation. It is perfectly competent to pass any number of laws providing different plans for improving the public highways and different methods for securing funds to accomplish that purpose, and there is no confusion or conflict in the different schemes so far as we are able to see, and able counsel have not directed our attention to any law in conflict with the law under review.

The record in this case clearly ·identifies and defines the boundaries of the proposed district, and the procedure follows the requirements of the law and all is made a permanent record. After the issuance of the bonds the record points with certainty to the property that will bear the burden of paying the bonds when due.

*Affirmed.*