## Ex parte JACKSON.

(In Banc. Jan. 4, 1937.)

[171 So. 545. No. 32403.]

510

**Webb M. Mize,** Assistant Attorney-General, for appellant.

**W. A. Geisenberger** and **J. H. Keyer,** both of Natchez, for appellee.

512

**Griffith, J.,** delivered the opinion of the court.

The petitioner was convicted in the circuit court of Adams county of an assault and battery, and was sentenced to serve thirty days in jail and to pay a fine of one hundred dollars and costs, which costs were twenty-three dollars and fifteen cents. The petitioner was put in jail on November 27, 1935, in said county, and there continuously remained. On June 2, 1936, he filed his petition in habeas corpus, alleging that he had then been in jail for more than a sufficient number of days, not including the thirty-day sentence of imprisonment, to pay his fine and costs at one dollar per day; that he had not been given work by the county, as required by law, and was and is unable to pay his fine, except by such work. He averred that he was entitled to the credit provided by statute on his fine and costs, which, as said, if allowed, would be more than sufficient to pay all of his fine and costs, and that he was, therefore, entitled to a discharge from further confinement. The case was heard by the chancellor on an agreed statement of facts, wherein those above stated were admitted to be true, and

that the board of supervisors of the county "has failed to provide a means or method by which a county convict is given an opportunity to work," the agreement stating no reason why the board had so failed. The chancellor sustained the petition and ordered the convict discharged from custody, from which judgment an appeal is brought to this court.

Section 4059, Code 1930, amended by chapter 269, sec. 1, Laws 1936, in a particular not here involved, provides as follows: "It is the imperative duty of the board of supervisors in each county in this state to require each convict sentenced to imprisonment in the county jail and the payment of a fine and costs, or to imprisonment and payment of costs, or to payment of fine and costs, to work out the sentence on the county convict farm or on the public roads or other public works of the county, or in a contiguous county, as herein provided." Sections 4060 and 4061 authorize and direct the board of supervisors, in order to carry out the provisions of section 4059, to purchase or lease a county convict farm, and to improve and equip the same, and to place a foreman in charge thereof, and to employ free labor to aid in the cultivation and gathering of the crops. Section 4062, as amended by said chapter 269, sec. 2, Laws 1936, provides an alternative plan for the joint ownership of a convict farm with a contiguous county, or with a municipality in the county; and a further alternative that the board may lease the convicts to another county, there to be worked as convicts are authorized to be worked by the lessor county. And section 4063 provides a still further alternative for the working of the convicts on the public roads of the county, or other works of the county, exclusively public in their character.

Section 4064 provides that when a convict is physically unable to work he may be excused therefrom upon a certificate to that effect by the county health officer; but that "all convicts shall be required each day to do

and perform such work as they are physically able to do and perform and which will not impair the health of such convict, or as is not inhumane to require of him." And section 4065 provides that "every convict for each day's work he is required to do shall receive credit on his fine and costs assessed against him of one dollar, until such fine and costs are fully paid."

It is therefore seen that the statute, in the most imperative language, made it the mandatory duty of the board of supervisors to require each convict, sentenced and imprisoned for the payment of a fine and costs, to work; and the statutes go on and authorize, and prescribe, the several means by which the convicts shall be worked. When a statute imposes a mandatory duty upon public officers to do a certain thing which beneficially concerns the interests or rights of persons under their charge, and gives authority to those officers to procure certain facilities or means with which the thing enjoined may be performed, the statute is mandatory also that they shall procure or avail of those means. See cases cited in notes, 59 C. J. 1076, 1077. It is immaterial, therefore, as to why the board of supervisors failed to furnish the facilities or means pointed out by the statute; it is enough that they admit that they did fail of their mandatory statutory duty.

The statute, in the plainest terms, as already shown, also requires each convict to work if physically able, and requires him to work each day that he is physically able so to do; and the statute further provides, in the plainest terms, that he shall receive a credit of a dollar a day for each day's work that he is required to do. And since he is required to work each day that he is able to work, the statute is, in consequence, equally plain that he is entitled to a dollar a day for each day he is physically able and willing to work. And it is no answer to this that no work was furnished him. Since he was by law expressly required to work, and the law mandatorily

required that he be furnished the means therefor, he had the corresponding right both to work and to have furnished to him the means therefor; and although no work was furnished him, he was and is as much entitled to the lawful credit therefor, as would a servant, who had made a contract with a master to do a certain number of days' work for a dollar a day, be entitled to that dollar a day for the contract period when willing and able and ready to do the work, although the employer failed or refused to furnish the place or means or opportunity by which the work might be done. Let us suppose that the county had furnished and was operating a county convict farm, or some other public work, and by order of the board, the sheriff refused to take this particular convict, or any other particular convict, out of the jail to work, refused to let him work, or by oversight neglected to do so although the convict was willing and anxious to work, and to work obediently, would it be for a moment contended that the convict, because "not required to work," would not be entitled to his credit? And what is the difference, we would ask, where, as here, no means or opportunity is furnished him, as the law directs must be done?

All of the above would have been clear enough, as we see it, had not another section of the Code, section 4067, Code 1930, provided as follows: "No convict shall be credited with any wages during the time he remains in the jail, and not at work." In adopting the several Code sections to which we have heretofore referred, the Legislature had the right to assume that every county would comply with the mandatory statutory provisions in regard to furnishing the means by which convicts could work out their fines, and that every convict able to work, and fit therefor by disposition and willingness, would work; hence the insertion of the last-quoted provision, which may be termed as cautionary in its nature, and without which all those in jail, although unfit or unwill-

·ing to work, might possibly have been deemed to be entitled under the law to credit for each day therein.

But when the Legislature convened at its next session, it was found that a number of the counties had not complied with the statutes and were allowing their convicts to languish in jail without work, the result being that in most counties where the uniform mandatory statutes had been complied with, those in jail for small fines could quickly work out their fines and be released, while in the delinquent counties, their convicts of small fines were subjected to the gross inequality of treatment of being held helpless in jail for two years, the extreme limit prescribed in section 4058, Code 1930. Wherefore, by chapter 246, Laws 1932, the Legislature amended said section 4067 by striking out of it the quoted language, to-wit, that no convict shall be credited with any wages during the time he remains in jail and not at work, the title to that amendatory act being as follows: "An Act to amend Section 4067 of the Mississipi Code of 1930 so as to credit convicts with time served in jail."

This title evidences the legislative construction of the associated sections of the Code, and which we think was a correct construction, namely, that without and except for the quoted language in section 4067, Code 1930, a convict able and willing to work would and should be credited with time served in jail, and that by striking out the quoted words the law would so stand as to give the credit. This the Legislature then did, and the legislative purpose in so doing is thus clear. There is presented, therefore, a case where the court is entitled to look to the title of the legislative act; but even without this, we are of the opinion, as already said, that when the quoted words were stricken from section 4067, the associated sections gave the convict the right to a credit of one dollar a day for each day in jail when the convict was ready, able, and willing to work, and whether any work was furnished him or not, and most certainly

he cannot be made to languish for months and months in jail for want of work to pay his fine, when he is deprived thereof by the failure of the constituted authorities to perform their mandatory duties, plain as they are in the statutes which we have mentioned.

We have not overlooked the case Ex parte Parker, 94 Miss. 899, 48 So. 297; but when that case was decided, the statutes imposed no mandatory duty upon the board of supervisors or upon any other public authority in respect to working convicts or furnishing them the means to work. It was the outworn and earlier policy, exemplified in that case, that subsequent legislation, and particularly the Code of 1930, intended to change and did change. Under the present legislation, it is not allowable, we are happy to say, to lock up some poor and friendless misdemeanant and keep him in jail for two years because he is not able to pay, and has no friends who can or will pay for him, a fine of ten dollars, as could have been done under the old, and less just and humane law.

Affirmed.

**Ethridge, J.,** delivered a dissenting opinion.

The majority opinion is a new application of the maxim that equity considers that as done which ought to be done. It has always been my understanding that this principle was only applicable to equity courts, and confined to contract or property rights, and that it could not be extended to habeas corpus courts, or courts of law, nor to statutes dealing with penal systems enacted by the Legislature.

I think the majority opinion is directly contrary to the principles announced in the case of Ex parte Parker, 94 Miss. 899, 48 So. 297, where it was held that in the absence of any action by the board, the defaulting misdemeanant must remain in jail. It was there contended,

as here, that, because the board of supervisors had not provided any system for the working of convicts, the person imprisoned for failure to pay fine and costs should be discharged, and that it was the imperative duty of the board of supervisors to do one of the things provided by chapter 109, Laws of 1908, either work the convicts on a county farm or farms, on the public roads, or any other work of an exclusively public character. See, also, Buck v. State, 103 Miss. 276, 60 So. 321.

These cases hold that the failure of an officer to do his duty does not discharge a prisoner. The board of supervisors may be subject to indictment, or mandamus, or a suit for damages for such failure.

Section 4065, Code of 1930, among other things, provides that every convict, for each day's work he is required to do, shall receive credit on his fine and costs assessed against him of one dollar until such fine and costs are fully paid. And in case the convict is serving such sentence of imprisonment, each day that he works in serving such sentence shall entitle him to credit for equal time on his sentence of imprisonment, but in no instance shall a convict receive credit on the fine and costs, and on the time sentenced to imprisonment, for the same work.

This provision clearly gives the convict credit only when he is required to work. The complaint in the petition for habeas corpus is that he was not required to work, and that, consequently, he did not work, and this section is, in no wise, affected by the amendment to section 4067, Code of 1930.

The title to a statute does not govern. It is no part of a statute itself, and, at most, is but an indication of what is being dealt with therein. It is true that the constitution provides that every bill shall have a title which ought to be an indication of its substance, but here, the title does not indicate the substance of the act, but is directly contrary to the body of the law.

Of course, we do not know what was originally in the bill when introduced. It may have been very different, when it was brought from the committee room, from what it was when introduced.

In seeking the intention of the Legislature, a court must look to the statute itself, and is not empowered to make a new law by judicial construction. Abbott v. State, 106 Miss. 340, 63 So. 667, Holly Springs v. Marshall County, 104 Miss. 752, 61 So. 703, and Prather v. Googe, 108 Miss. 670, 671, 67 So. 156.

An interesting discussion of the laws dealing with convicts is found in Ex parte Dig, 86 Miss. 597, 38 So. 730, 731, wherein Judge Truly, speaking for the court, held that when a convict is sentenced, and the amount of his fine becomes known, the law gives him the privilege of paying in money the amount of such penalties. He can satisfy and discharge this portion of the judgment of the court imposed upon him as a punishment for his crime immediately upon sentence, and before delivery to the contractor if he so desires. It was further said that, ''If, however, he fails to avail himself of this opportunity, and the fine, costs, and jail fees 'be not promptly paid,' as an additional penalty imposed by warrant of law, he forfeits the right to take advantage of this method of securing his release, and is then only entitled to his discharge when he shall have worked out the amount of such fine, costs, and jail fees in one of the lawful modes prescribed. The Legislature, if it chose, could make this rule absolute, and could, if in its wisdom it should seem wise or best, provide that any convict failing to promptly pay upon conviction all the penalties fixed by the judge should thereafter only procure his release by laboring for whatever period and under whatever humane provisions the law might fix. But no such harsh rule has been adopted by the Legislature of our state. The statute here under review provides that even after the convict has forfeited his right to procure his release

by paying in cash the fine imposed and the costs incurred, and has become, by reason of his default, subject to the other penalty of being required to pay the same by labor instead of in money, by section 22 of chapter 76, p. 72, Acts 1894, it is provided that a convict in the custody of a contractor, who has served out his imprisonment sentence, may pay out and secure his liberty at any time by paying to the contractor or into the county treasury the amount 'unearned by him and the reasonable value of all clothing furnished to him, the amount to be ascertained and determined by the sheriff, in case of disagreement.' . . . Not only is this required, but the law is mandatory that the convict shall be furnished with fuel and bedding and sufficient wholesome food. . . . If the convict desires to procure his freedom on a day earlier than that stated in his warrant of detention, he can only do so by complying with the provisions and satisfying the conditions set out in the law granting him the privilege.''

Section 4058, Code of 1930, brought forward chapter 109, Laws of 1908, and, among other things, provides that every convict sentenced to imprisonment and the payment of a fine shall be committed and confined to jail for the full time specified for imprisonment until discharged in due course of law. It further provides that no convict shall be held in continuous confinement under a conviction for any one offense, for failure to pay fine and costs in such case, for a period of not more than two years.

From a comparison of all the provisions of law upon this subject, it is plain to my mind that it was the purpose of the Legislature to require a payment of the time and costs before a prisoner can be released, unless such prisoner was required to work his sentence out, which was not done in this case, and that he should be entitled to a credit on his fine and costs at the rate of one dollar per day. The elimination of the provisions prohibit-

ing his getting credit for the time he is in jail by the amendment of section 4067, Code of 1930, by chapter 246, Laws of 1932, does not affect the duty of the sheriff to hold the prisoner until the fine and costs have been paid. There is no provision to meet this hardship in the law itself. The law, however, gives the Governor the power to pardon, which he, no doubt, would have done had the facts, as stated in the petition, been brough before him.

We, as judges, should indulge the presumption that such power will be promptly and rightfully exercised whenever the conditions call therefor.

In my opinion, the constitutional system of dividing the government into three departments, and prohibiting one department from exercising the power of another, does not warrant the conclusion reached in the majority opinion. It is not for the judiciary to supply deficiencies in legislative action.

A bad precedent is sometimes laid down to establish a worthy end in hard cases, but the law must operate upon general principles, and the Legislature, and not the courts, must be looked to in order to secure proper changes in statutes.

I therefore think that the judgment of the court below should be reversed.