MEMPHIS & C. RY. Co. *v.* BULLEN, SHERIFF AND TAX COLLECTOR, *et al.*

(Division B. Dec. 22, 1928. En Banc, April 15, 1929.)

[121 So. 826. No. 27496.]

538

*S. R. Prince* and *John B. Hyde,* both of Washington, D. C., and *Ely B. Mitchell,* of Corinth, for appellant.

*Magruder, Walker & Magruder,* of Starkville, *J. A. Cunningham,* of Booneville, for appellees.

*Benjamin H. Charles,* of St. Louis, Mo., for appellees.

Argued orally by *John B. Hyde,* for appellant, and by *Benjamin H. Charles* and *W. W. Magruder,* for appellee.

ANDERSON, J., delivered the opinion of the court.

Appellant filed the bill in this case against appellees, the members of the board of supervisors of Tishomingo county, and Omer J. Bullen, sheriff and tax collector of that county, to enjoin the former from levying, and the latter from collecting, an *ad valorem* tax on the taxable property of the appellant in the Oldham road district. A temporary injunction was issued and served in ac-

cordance with the prayer of the bill. There was a trial on bill, answer, motion to dissolve the injunction, and proof, resulting in a final decree dissolving the injunction, and dismissing appellant's bill. From that decree, appellant prosecutes this appeal.

The Oldham road district was organized under chapter 277, Laws of 1920. Appellant contends that the manner of the organization and establishment of road districts, under the provisions of that chapter, deprives property owners of such districts, not petitioning therefor, of due process, in violation of the due process clause of the Fourteenth Amendment to the Federal Constitution; and, to maintain that position, appellant relies on *Browning* v. *Hooper,* 269 U. S. 396, 46 S. Ct. 141, 70 L. Ed. 330. The Texas statute under consideration in that case conferred power on the property owners, petitioning for the organization of the road district, to arbitrarily fix, in their petition, the territory to be included in the district, and, therefore, the property to be taxed. The supreme court held that that was one of the essential elements which determined the burden to be borne by the taxpayers of the district, and that it was essential to due process of law that the property owners be given an opportunity to be heard on that question.

Section 2, chapter 277, Laws of 1920, provides as follows: "That upon presentation to the board of supervisors of any county of a petition containing the names of twenty per cent of the qualified electors of any one or more supervisors districts of any territory proposed to be created and organized into a road district of such county asking that such district or districts or territory be permitted to come under the provisions of this act it shall be the duty of such board of supervisors to order an election to be held on a day to be fixed by them submitting the proposal to issue bonds of such district or districts to the qualified electors of such district or dis-

tricts and the election commissioners of such county shall give notice of such election to issue such bonds by publication in a newspaper published in the county, having a general circulation therein, and if none be therein published, then in some newspaper having a general circulation therein, published elsewhere, for three successive weeks, which said election shall be held and be conducted according to the provisions of the chapter on 'registration and elections' of the Code of 1906, so far as applicable; the tickets to be used in such election to contain the following: 'For the issuance of bonds', and either below or above it, in the ticket, 'Against the issuance of bonds.' ".

Appellant contends that that section of the statute provides substantially the same scheme for the organization and establishment of road districts as the Texas statute did that was condemned by the supreme court of the United States in *Browning* v. *Hooper, supra.* The view we take renders it unnecessary to decide this question, for we are of the opinion that, if it be true that chapter 277, Laws of 1920, violates the due process clause of the Fourteenth Amendment, as construed in *Browning* v. *Hooper,* nevertheless, the establishment and organization of the road district involved, the issuance of bonds therefor, as well as the other acts and things done in pursuance of the statute, were validated by chapter 278 of the Laws of 1926, section 8547, Hemingway's 1927 Code. That statute validates all road districts theretofore organized under any road laws of the state, and provides that the bonds issued for such districts shall be legal, and that all acts and resolutions of the boards of supervisors done and passed in pursuance of any such statute, as well as all levies of taxes on the property of such districts, under the provisions of any such law, shall be valid.

Before the passage of chapter 278, Laws of 1926, and at the same session of the legislature, chapter 1080, Laws

of 1926, was adopted. The latter was a special and local act applying alone to the particular road district involved. The title to the act fairly portrays its purpose, which is: "An Act to validate the organization of the 'Oldham' Road District of Tishomingo county, Mississippi, to confirm the boundaries thereof, to validate the authorization, issuance and sale of certain road bonds thereof, to authorize the issuance of additional bonds thereof, and to provide for their payment." Section 1 of chapter 278, Laws of 1926, provides as follows: "That in cases where the board of supervisors of any county in this state has organized or attempted to organize a road district under the provisions of the statutes of this state, where the creation of such district or the issuance of the bonds thereof has been validated or attempted to be validated by any statute enacted during the 1926 session of this legislature, such district, with the boundaries set forth and described in the minutes of the Board of Supervisors, or set forth and described in any Act passed at this session of the legislature, be, and the same is hereby declared to be a valid road district of such county, and the organization and creation and all orders, resolutions and proceedings of the Board of Supervisors in connection with such organization and creation, be, and they are hereby confirmed and ratified."

It will be seen from these two statutes that the legislature attempted to validate the road district involved and the bonds issued therefor, first by a local act specifically describing the boundaries of the district, and then by a general act, made applicable to all road districts in the state, regardless of what statute they were organized and established under. If the legislature had delegated to the boards of supervisors the legislative authority to establish road districts in their counties, fix the boundaries thereof, and prescribe the amount of bonds to be issued for such districts, and levy the neces-

sary *ad valorem* tax with which to pay the bonds and maintain the roads of the district, without an opportunity of hearing on the part of the property owners of the district, and without an election on the question whether the bonds should be issued or not, such a statute would not have violated the due process clause of the Fourteenth Amendment to the Federal Constitution. *Browning* v. *Hooper, supra*; *Valley Farms Co.* v. *Westchester,* 261 U. S. 155, 43 S. Ct. 261, 67 L. Ed. 585; *Hancock* v. *Muskogee,* 250 U. S. 454, 39 S. Ct. 528, 63 L. Ed. 1081; *St. Louis & S. W. R. Co.* v. *Nattin,* 277 U. S. 157, 48 S. Ct. 438, 72 L. Ed. 830, and *Swayne* v. *Hattiesburg,* 147 Miss. 246, 111 So. 818, 56 A. L. R. 926. In other words, if chapter 277 of the Laws of 1920, instead of the scheme therein set out for the organization and establishment of road districts, had conferred on the boards of supervisors the legislative authority to organize and establish road districts as just above set out, clearly, under the cases cited, the statute would not have contravened the due process clause of the Fourteenth Amendment.

Appellee's contention is that each of these statutes validated the road district involved and the bonds issued therefor. The court is not in agreement as to whether the local and special act violates section 90 of our Constitution, but is in agreement that there is no constitutional objection to chapter 278, Laws of 1926, and that the district and its bonds were validated by that act, for the reasons given, which we will undertake to state again in a very brief manner. Under the Fourteenth Amendment, the legislature of a state may directly, by a legislative act, select and lay out local improvement districts and spread the costs of their improvement over the property of the districts in the form of taxes, or the legislature may delegate that authority (which is legislative authority) to the governing body of each county. Concede that such authority was not conferred on the

boards of supervisors by chapter 277, Laws of 1920, still, it was accomplished by the curative act (chapter 278, Laws of 1926).

It is beyond question that the legislature has the power, under the Constitution, to validate the bonds issued by any political subdivision of a state which it could have previously, constitutionally, authorized. *Griffith* v. *Vicksburg,* 102 Miss. 1, 58 So. 781; *Bacot* v. *Hinds County,* 124 Miss. 231, 86 So. 765; *Parker* v. *Grenada County,* 125 Miss. 617, 88 So. 172; *Jackson & E. Railway Co.* v. *Burns,* 148 Miss. 7, 113 So. 908; *Von Zondt* v. *Braxton,* 149 Miss. 461, 115 So. 557.

We are of the opinion that the other contentions of appellant are without merit, and are not sufficiently grave to call for discussion by the court.

*Affirmed.*

### En Banc.

ANDERSON, J., delivered the opinion of the court.

This cause was submitted to and decided by Division B of the court. On that hearing the decree of the court below was affirmed. Thereafter a suggestion of error was filed by appellant, followed by an order entered, setting aside the judgment of affirmance, and remanding the cause to the docket for consideration and decision by the court *en banc.* The court *en banc,* after argument and consideration, adopts the opinion handed down by Division B, and in addition the following opinion.

*Ritchie* v. *Franklin County,* 22 Wall. 67, 22 L. Ed. 825, supports the opinion handed down in this case. The Constitution of Missouri prohibited local or special legislation on the subject of the construction and maintenance of public roads and the issuance of bonds therefor. Franklin county in that state issued and sold bonds for the purpose of macadamizing and bridging certain of its roads. The statute under which the bonds were issued

and sold required that the expenditure be first approved by the voters. This was not done, and for that reason the supreme court of Missouri held the bonds void. *Steines* v. *Franklin County*, 48 Mo. 167, 8 Am. Rep. 87. The legislature of Missouri thereupon passed a general curative act applying to the whole state by which all road bonds theretofore issued in any county of the state without authority of law were validated. The supreme court of the United States, as well as the supreme court of Missouri, held the curative act valid. In deciding that question the supreme court of the United States used this language: "There is no provision in the constitution of Missouri restraining the General Assembly from conferring on counties the authority to borrow money to improve their roads without asking the consent of the voters. If so, why cannot the legislature confer on counties the power to borrow money to pay for debts already contracted for this purpose. We agree with the supreme court of Missouri, that the act in question being an authority to do a particular thing, may be construed as an original power, but whether it be treated as an original power or as curative and confirmatory legislation, it is equally valid."

There is some force in the thought that chapter 278 of the Laws of 1926 merely embodied a handful of local laws passed in a single act; but the Missouri statute upheld by the supreme court in the above case was exactly that character of statute. The constitutional requirement that a certain character of laws shall be general, and not local, does not prevent a reasonable classification by the legislature. That decision of the Federal supreme court is in line with the decisions of this court. *Cox* v. *Wallace*, 100 Miss. 525, 56 So. 461; *Toombs* v. *Sharkey Co.*, 140 Miss. 676, 106 So. 273; *State ex rel. Knox, Atty.-Gen.*, v. *Speakes*, 144 Miss. 125, 109 So. 129. *Cox* v. *Wallace* involved the constitutionality of section

.371, Code of 1906. Sections 371 to 391, inclusive, of the Code of 1906, provide for the establishment and maintenance of drainage districts in the state. Section 371 provides that the act shall not apply "to land overflowed by backwaters of the Mississippi." Considerable territory in the Delta section of the state is subject to overflow by backwaters of the Mississippi river. Paragraph (q) of section 90 of the Constitution provides, among other things, that the legislature shall not pass local or special laws relating to water courses. The drainage statute under consideration in that case related to water courses. It was contended that it was a local or special act, because it did not apply to the whole state, and therefore violative of the Constitution. The court held that the exception in the statute of that territory in the state overflowed by the backwaters of the Mississippi river did not make the act a local or special law. In *State ex rel. Knox* v. *Speakes,* the court, in discussing the distinction between local or special laws and general laws, used this language: "In determining the question whether an act is a general law or a local or special law, the courts will look to the substance and practical operation of the law, rather than to its form and phraseology. The constitutional requirement that certain character of laws shall be general and uniform in their operation does not prevent a reasonable classification by the legislature. A law is general in the sense of such a constitutional provision when it applies to and operates uniformly on all members of any class of persons, *places,* or thing requiring legislation peculiar to the particular class dealt with by the law. A law is general and uniform, although it does not operate on every person in the state. It is general and uniform if it operates on every person who is brought within the classification and circumstances provided for by the law. Where a law is broad enough to reach every portion of the state and to embrace within its provisions every person and thing distinguished by marked char-

acteristics of sufficient importance to make them clearly a class by themselves, it is not a local or special law, but a general law, *even though there be but one member of the class or one place on which it operates.* [Italics ours.] 25 R. C. L., section 66, p. 815, at page 818. In the case of *Toombs* v. *Sharkey,* 140 Miss. 676, 106 So. 273, at page 275, the language above quoted from 25 R. C. L., section 66, p. 818, is quoted with approval."

The statute here under consideration makes a class of all road districts organized prior to its passage under any of the road laws of the state, and validates such districts and the bonds issued therefor. The statute operates uniformly on all the members of the class, and all the members of the class are marked by like characteristics. The act is general, not special; it covers the whole state, not part of the state, regardless of where the road district is situated.

In view of the large public interests involved in the attack on the constitutionality of chapter 277 of the Laws of 1920 (many millions of dollars of road bonds having been issued under the act, and now outstanding) the court is asked to pass on that question, as well as the constitutionality of the local act, chapter 1080 of the Laws of 1926, by which the legislature undertook to validate the particular road district here involved, and the bonds issued therefor. We feel constrained for the reasons suggested to do so.

Appellant contends that chapter 277 of the Laws of 1920 is violative of both the due process and the equal protection clauses of the Fourteenth Amendment to the Federal Constitution. In considering these questions it should be borne in mind that the road district involved is an *ad valorem* taxing district, and not a special benefit assessment district. The property of the district, both real and personal, is taxed for state and county purposes in proportion to its assessed value, upon an *ad valorem*

basis, and is likewise taxed under the act for road purposes. The act makes no distinction between real and personal property.

The main case relied upon by appellant to sustain its position that the statute denies to the property owners of the district due process is *Browning* v. *Hooper,* 269 U. S. 396, 46 S. Ct. 141, 70 L. Ed. 330. In that case it was held that, where a local road district was created by petition of a certain per cent of the taxpayers of the territory composing the district, and there was no legislative determination that the property in the district would be benefited by the proposed local improvement, notice to the property owners of the district, and an opportunity to be heard, was essential to due process. The Texas statute, held to violate due process in that case, did not itself create the district, levy the taxes, or fix the amount to be raised for road purposes. There was nothing in the statute to guide or limit the action of the signers of the petition in selecting the property to be assessed and taxed. Subject to a vote of the district, the territory to be taxed was absolutely fixed by the petitioners. The county court had no power to deny the petition. It was bound under the statute to organize into a taxing district the territory as described in the petition. The court said, among other things: "But it is essential to due process of law that such owners be given notice and opportunity to be heard on that question where, as here, the district was not created by the legislature, and there has been no legislative determination that their property will be benefited by the local improvement. Appellants were denied all opportunity to be heard. No officer or tribunal was empowered by the law of the state to hear them, or to consider and determine whether the road improvements in question would benefit their lands. The act is repugnant to the due process clause of the Fourteenth Amendment."

The court further stated, however, that, where a local improvement territory is selected, and the burden is spread by the legislature, or by some local administrative board to which the state has granted legislative powers on the subject, the property owners had no constitutional right to be heard, and, therefore, there was no denial of due process. *St. L. & S. W. Ry. Co.* v. *Nattin,* 277 U. S. 157, 48 S. Ct. 438, 72 L. Ed. 830, involved the constitutionality of a road statute of Louisiana. Under the laws of that state the police juries of the parishes are the governing bodies of the respective parishes. The statute empowered the police juries to create road districts from such portions of their parishes as they might determine, and, with the approval of the voters of the district, to issue the bonds of the district and construct roads from the proceeds thereof. The constitutionality of the statute was challenged upon the ground that it failed to provide the taxpayers of the district with an opportunity to be heard. The court said that the sufficiently short answer to the contention was that under the repeated decisions of the supreme court that was not essential; that the tax sought to be enjoined in that case was a general *ad valorem* tax, and that its legality did not depend upon the receipt of any special benefit by the taxpayers; that other statutes of the state provided ample opportunities for the taxpayers to contest the value of their property for the purpose of taxation; that a local legislative body, as was the police jury, when properly authorized, could levy a general *ad valorem* tax upon all property within its jurisdiction, including common carriers engaged in interstate commerce, without violating the Federal Constitution—citing *Valley Farms Co.* v. *Westchester,* 261 U. S. 155, 43 S. Ct. 261, 67 L. Ed. 585; *Hancock* v. *Muskogee,* 250 U. S. 454, 39 S. Ct. 528, 63 L. Ed. 1081.

Now, applying these decisions of the supreme court to the act here involved: If the act confers upon the board of supervisors the legislative discretion of determining

whether or not the territory described in the petition shall be organized into a road district, notice and an opportunity to be heard on the part of the taxpayers is not required. Putting it differently, if, in the organization of a road district under the statute, the board of supervisors acts in a legislative capacity, and not in a judicial capacity, and has the legislative discretion to organize, or refuse to organize, the district petitioned for, as they may deem to the best interest of those concerned, then an opportunity to be heard on the part of the taxpayers is not required. Can the act reasonably be so construed?

The provisions of section 2 of the act, which is copied in the opinion handed down in this case, furnish the principal grounds of attack on the constitutionality of the act. Appellant contends that this section of the act made it mandatory on the board of supervisors to organize the road district petitioned for, and that the board had no legislative or other discretion in the matter. We think this question has been, to a large extent, determined against appellant's contention. Chapter 277, Laws of 1920, is amendatory of chapter 176, Laws of 1914; chapter 145, Laws of 1912, and chapter 149, Laws of 1910. So far as they affect the questions here involved, sections 1, 2, and 3 of the act (sections 8429 to 8431, inclusive, of Hemingway's Code of 1927), have been substantially the same in all four acts. In *Robinson* v. *Itawamba County*, 105 Miss. 90, 62 So. 3, a road district was organized under chapter 149 of the Laws of 1910. The board of supervisors thereafter passed a resolution providing for the issuance and sale of the bonds of the district for the purpose of constructing improved highways. No further steps were taken by the board. On demand of interested parties, the board refused to proceed with the issuance and sale of bonds. Mandamus was sued out to force the board to proceed with the issuance and sale of bonds and construction of the roads. The

court held that the board of supervisors could not be forced to issue and sell bonds for two reasons, namely, because the board had the right, under the statute, to exercise its discretion as to whether or not it would do so, and that the law furnished an adequate remedy by appeal to the circuit court from the action of the board in refusing to issue the bonds. The language of section 2 of the statute in reference to the organization of road districts is not any more imperative than the language of section 3 with reference to the duty of the board to issue bonds of the district after the district has been organized. *Bryant* v. *Yalobusha County,* 133 Miss. 714, 98 So. 148, does not hold to the contrary. The road district involved in that case was organized under the statute here under consideration. It was held that, if the board of supervisors organized a road district under the act, it had to be the district petitioned for—that the board had no authority under the act to organize either a larger or a smaller district. The question whether, under the act, the board was vested with the discretion whether or not it would organize any road district whatever, was not involved nor decided in that case. In *Prather* v. *Googe,* 108 Miss. 670, 67 So. 156, chapter 176 of the Laws of 1914, of which the act involved is amendatory, was challenged as unconstitutional on at least two grounds, one of which was that it violated section 170 of the Constitution, in that it encroached on the jurisdiction of the board of supervisors over public highways. It is true, the identical question here involved was not decided in that case, but the court said, in broad language, that the act did not take away from the board of supervisors its discretionary powers over public roads. Construing the statute in the light of section 170 of the Constitution, vesting in the board of supervisors jurisdiction over roads, bridges, and ferries, and the above decisions of our court, we are of the opinion that the act vested in the board of supervisors the legislative discretion to or-

ganize or refuse to organize, according to their judgment of the best interests of those concerned, the road district petitioned for; that although, under the Yalobusha county case, if a district is organized, it must contain the territory embodied in the petition—no more, no less—still the board is vested with the discretion of deciding whether the benefits to be derived from the proposed district will be justified by the necessary tax burdens. So construing the statute, it comes within the principles laid down by the supreme court in the Louisiana case [*St. Louis & S. W. Ry. Co.* v. *Nattin*, 277 U. S. 157, 48 S Ct. 438, 72 L. Ed. 830], and falls without the class of statutes held by the supreme court as denying the process, in the Texas case [*Browning* v. *Hooper*, 269 U. S. 396, 46 S. Ct. 141, 70 L. Ed. 330.]

But, if there were any illegality in the organization of the road district and in the issuance of the bonds therefor, such illegality would be cured by the local act, chapter 1080, Laws of 1926, as well as by the general curative act already discussed. The local act did not violate paragraph (*l*) of section 90 of the Constitution, which prohibits local or special legislation on the subject of laying out, opening, altering, or working public highways. *Robertson* v. *Leflore County*, 112 Miss. 54, 72 So. 852, is decisive of this question. Chapter 424 of the Laws of 1916 was involved in that case. The act authorized the board of supervisors of Leflore county to issue the bonds of that county to an amount not exceeding six hundred thousand dollars for the purpose of improving the public roads of the county. The bonds were issued under the act, and the validity of the act was challenged, on the ground that it violated paragraph (*l*) of section 90 of the Constitution. That was the only question in the case. The court held the act constitutional, because it did not provide for the laying out, opening, altering, or working of public roads, but provided alone for the

raising of revenue for that purpose; that the act had nothing to do with the method by which public roads were to be laid out, opened, altered, or worked, that being covered by the general laws of the state on the subject. Under the authorities cited in the opinion handed down in this case, the legislature has the power, by a subsequent act, to make valid, proceedings had under a prior void act, provided, under the Constitution, it originally could have authorized the proceedings had. In the light of this principle, the Robertson case means that, if Leflore county had issued road bonds without any authority of law, the legislature could, by a subsequent local act, applying alone to that county, have validated such bonds. In that case the local act authorized the issuance of the bonds of the county. In the present case, the local act validated the organization of the district and the bonds issued therefor. We see no difference in principle. The organization of a road district is a step further removed from the laying out, opening, altering, or working of public roads, than the issuance of the bonds of such a district. If the issuance of the bonds could be validated by a local act, the organization of the district could likewise be validated.

Appellant contends that chapter 277 of the Laws of 1920 also violates the equal protection clause of the Fourteenth Amendment, because it is unreasonably discriminatory *per se,* in that the burden of taxation is not spread over the district in proportion to the benefits, but only in proportion to the accidental facts, including the general wealth of the individuals and corporations chancing to have taxable property in the district; and for the further reason the act authorizes the taxation of real and personal property, based on its general assessed valuation, to pay the cost of local improvements to real property. To sustain that position, appellant relies on *Road Improvement Dist No. 1* v. *Missouri Pacific R. R.*

*Co.*, 274 U. S. 188, 47 S. Ct. 563, 71 L. Ed. 992, and other decisions of the supreme court along the lines of that case. The taxing district involved in that case was not an *ad valorem* district, but a special benefit assessment road district. The assessment against the railroad company for road improvements was based upon personal property, as well as real property, while all other assessments in the district were confined to real property alone. The assessment against the railroad was thirteen and two-tenths per cent of the costs of a hard-surface road paralleling the railroad. The area of the railroad in the road district was eight-tenths of one per cent of the entire area of the district. The court held that the assessment was plainly arbitrary and discriminatory, and violative of both the due process and the equal protection clauses of the Fourteenth Amendment.

We have no such case here. All property in the district involved in this case, both real and personal, on which an *ad valorem* tax is levied for general state and county purposes is likewise levied for road purposes of the district. Appellant lays stress on the following facts: The area of the district is two thousand nine hundred fifty acres, of which appellant owns only fifty-seven and seventy-nine hundredths acres, which is one and nine-tenths per cent of the whole acreage; the assessed valuation of appellant's property in the district is sixty-two and thirty-nine hundredths per cent of the entire assessed valuation of the district. The evidence showed, however, that the proceeds of the bonds issued for the district had been expended on public roads, and none of the roads constructed ran parallel with the appellant's line of railroad, but nearer at right angles with it; that the road district was composed of a little less than five sections, but that the sections were not strung along, one after the other, so as to take in as much of appellant's line of railroad as could be done; and, furthermore, the evidence tended to show, and the chancellor found as facts, that the improved

roads in the district would benefit appellant's business as a common carrier, both directly and indirectly—that the direct benefit would be derived from an increased tonnage for appellant from the gravel mines in the district, which gravel mines were made more accessible to miners by virtue of the improved roads. In other words, that the improved roads increased the labor facilities in the gravel mines to such an extent that the output of the mines would be materially increased, the output of the mines being transported alone over appellant's lines of railroad. We are unable to see that the operation of the statute has worked any arbitrary and unreasonable discrimination against appellant. We do not think the cases relied on by appellant at all decisive in favor of appellant's contention.

The only other question which we think calls for discussion by the court is appellant's contention that proof of publication of the notice of the bond election was not on file with the board of supervisors when the board declared the result of the election, and provided by resolution for the issuance of the bonds. Appellant contends that proof of publication of the notice was jurisdictional —that it had to appear on the minutes of the board before provision was made for the issuance of the bonds. If appellant's position in that respect be sound, it appears that a complete and short answer to the contention is that the failure of the board to have proof of publication of notice on file, and spread on its minutes, was cured by both the general and local validating acts already discussed in this opinion.

*Affirmed.*

Etheridge, J. (specially concurring).

I concur in the conclusion reached in the opinion written by Judge Anderson in this case, and in most of the reasoning therein, but I do not believe that chapter 1080,

Laws 1926, is valid, or has any curative effect whatever; nor do I believe that the case of *Robertson* v. *Leflore County,* 112 Miss. 54, 72 So. 852, affects the decision of the question here. That case had nothing to do with the construction and laying out of roads, while chapter 277, Laws 1920, expressly provides for the construction and maintenance of highways for the convenience of the traveling public.

The dominant purpose of chapter 277, Laws 1920, is the construction and maintenance of public roads. Clause (*l*) of section 90 of the state Constitution prohibits special laws for laying out, opening, altering, and working roads and highways. If chapter 277 were unconstitutional (which I do not believe), it would not be cured by a special, local curative act. While this clause is express in its terms and clearly prohibits any special road law, under any guise or form whatever, regarding the subjects therein named it is not the only provision of the Constitution upon the subject. By section 85 of the Constitution, it is provided: "The legislature shall provide by general law for the working of public roads by contract or by county prisoners, or both. Such law may be put in operation only by a vote of the board of supervisors in those counties where it may be desirable."

It will be noted that the requirement here is by general law, and, by implication, prohibits special laws; and chapter 277 is one of the laws enacted by the legislature to carry out the provision of this section. Again, section 88 of the Constitution provides for general laws for the protection of local and private interests, wherever they can be enacted, and reads: "The legislature shall pass general laws, under which local and private interests shall be provided for and protected," etc. These sections clearly indicate that the policy of the state is to have general laws enacted to cover a particular case wherever they can be enacted, while clause (*l*) of section

90, as above stated, prohibits absolutely the enactment of local or special laws upon the subjects therein named; and it is clearly beyond the power of the legislature to enact a local or special law, as it undertook to do, in chapter 1080, Laws 1926, upon this subject.

One of the purposes to be conserved by the Constitution is to have wise, considered, legislation wherever that can be had. It is well known that the legislature is much more careful in the enactment of general laws than it is of local or special laws. General laws are enacted for the whole state, and for the people within the state who fall within the subject-matter of the legislation. When laws are being passed, the enactment of which affects the interest of the whole people, or the state, their effect will be much more carefully studied and considered than will be the case where they affect a portion of a territory, or only a portion of the people of the state. Men will be more careful of their votes if the effect of the law is general. Special laws either confer special privileges or advantages, or else impose special burdens. Local laws, however, affect only a particular portion of the state and a certain class of people, or particular individuals, and for this reason the Constitutional Convention clearly indicated a definite purpose to have only general laws where such could be applied. These constitutional provisions should be given a fair construction by the court in order that they may serve the purpose for which they were enacted.

Since the original opinion was rendered in this case (which was withdrawn after suggestion of error was filed), I have come to doubt the constitutionality of the general act referred to in Judge ANDERSON's opinion, chapter 278, Laws 1926, but my doubts, however, are not strong enough, with the construction put upon it by the court and the authorities cited from the United States supreme court, to warrant my dissenting. I think, however, that chapter 277, Laws 1920, is constitutional and

needs no curative act. By section 1 of that act, it is provided that: "The board of supervisors of any county in this state are hereby authorized and empowered to construct, or construct and maintain, or maintain one or more highways for the convenience of the traveling public, by contracts in one or more supervisor's districts of said county, or part of one supervisor's district, or two or more or parts of two or more supervisor's districts in such county, and for that purpose are authorized to issue and sell bonds and to levy and to collect taxes to pay such bonds and to maintain such roads so constructed in the manner herein provided."

In my opinion, the board of supervisors, by this section, have full power to create the road district, and are not limited in that power to petition, or other action, by the people. Sections 2, 3, and 4 of the act provide for the issuance of bonds, and, while the language of section 2 thereof is not clear, reading—"That upon presentation to the board of supervisors of any county of a petition containing the names of twenty per cent of the qualified electors of any one or more supervisors districts of any territory *proposed to be created and organized into a road district of such county* asking that such district or districts or territory be permitted to come under the provisions of this act. it shall be the duty of such board of supervisors to order an election," etc., its language does not restrict the board's right to create road districts, but is applicable to the bond issue. By reference to section 85 of the Constitution, above quoted, it will be seen that a law of the character of chapter 277 can only be put in force by the board of supervisors; and the purpose of the petition is to have the board adopt the law, if it will, and make effective the purpose of the statute. The section of the act does not specifically provide that it shall be the duty of the board to grant the petition regardless of its desire and judgment in the matter; in other words, the duty is not imposed upon

the board to create a district, but is imposed merely for the purpose of securing a bond issue to provide money to make the scheme effective. The board may, independent of the people, create a road district under section 1 of the act; it may refuse to do so if it thinks proper. If it does refuse, no proceeding can be had under the law. I think it plain that in construing sections 170 and 85 of the Constitution together with section 1 of chapter 277, the board's jurisdiction and power is plenary in creating a road district. I think, therefore, *Bryant* v. *Yalobusha County,* 133 Miss. 714, 98 So. 148, should be modified or overruled. When that case was decided, the constitutional questions involved here were not presented and argued in that case. But I agree with Judge ANDERSON's opinion that the board of supervisors, in that case, are not required to create a district, and that they may refuse to do so. This being true, the board has legislative discretion to create a road district, and such discretion, conferred by section 170 of the Constitution, does not require notice and hearing on the part of the people or taxpayers.

SMITH, C. J. (dissenting).

The road district here in question is composed of two thousand nine hundred fifty acres of land through which the appellant's railroad runs; it owning fifty-seven and seventy-nine hundredths acres of the land composing the district. There were eighteen qualified electors residing in the district, twenty per cent of whom filed a petition with the board of supervisors under section 2, chapter 277, Laws of 1920, praying that the territory therein described be permitted to come under the provisions of chapter 277, Laws of 1920, and that the board submit to the electors of the proposed district the question of the issuance of bonds of the district for the purpose of obtaining money thereon for the maintenance

of public roads therein. This election resulted in favor of the issuance of the bonds, and the board of supervisors thereafter proceeded in accordance with the provisions of the statute.

The injunction here sued out by the appellant is to restrain the sheriff from collecting taxes on the appellant's property levied by the board of supervisors on the property in the district as described in the petition praying for the creation thereof, and among the questions here presented are: Was the district as originally created valid? And, if that question should be answered in the negative, then was the creation of the district validated by the two statutes thereafter passed by the legislature for that purpose?

Section 2, chapter 277, Laws of 1920, makes it mandatory on boards of supervisors to create a road district in accordance with the prayer of a petition therefor, and to issue the bonds of the district for the purpose of maintaining roads therein, provided a majority of the qualified electors therein shall assent thereto in an election held for that purpose. The board of supervisors is without power to decline to act on the petition when signed by twenty per cent of the qualified electors of the territory of the proposed district, and in *Bryant* v. *Yalobusha County*, 133 Miss. 714, 98 So. 148, it was held that the board is without power to create a district with territory different from that described in the petition. The statute is plain and unambiguous, and I am at a loss to see how it can be otherwise construed. At all events no discretion in creating the district was exercised by the board of supervisors. It acted purely in a ministerial capacity, and confined itself "solely to carrying out the will of the petitioners."

A local improvement district, as the one here in question, may be created by a legislative body having full power over the subject without an opportunity being given to the owners of land therein to protest against

the creation of the district. Under section 170 of the state Constitution, the legislature may authorize boards of supervisors to create a road district without giving the landowners therein an opportunity to be heard in opposition thereto, provided such boards are permitted to exercise full legislative discretion in creating the districts. But where an improvement district is created by an administrative board, to which the power so to do has been legally delegated, which has not the right to exercise its own discretion in creating the district, but must create the district, if at all, in accordance with a prayer of a petition therefor, all landowners in the district have the right to be heard in opposition thereto, and to deprive them of that right would be to take their property without due process of law. *Browning* v. *Hooper*, 269 U. S. 396, 46 S. Ct. 141, 70 L. Ed. 330. Such was the case here, and consequently the original creation of the district was a nullity.

The validating statutes can breathe no life into the district. Such statutes may cure a defectively created improvement district, provided the district was created in a manner which the legislature in the first instance could have authorized. Such is not the case here, for the legislature was without power to have authorized the board of supervisors in the first instance to have created this road district in the manner that it was created. No legislative body exercising full discretion in the matter has here acted, but the district was arbitrarily created in accordance with the wishes of a portion only of the landowners of the district.

There is another reason why chapter 1080 of the Laws of 1926 should not be upheld as a validating statute. It is beyond question a local and special statute relating to the "laying out, opening, altering, and working roads and highways," and therefore violates paragraph (*l*), section 90 of the state Constitution. Chapter 278, Laws of 1926, may not violate section 90 of the Constitution,

but as to that I am not clear, and will express no opinion thereon.

Neither of these statutes can be upheld on the theory that by them the legislature itself created this road district, for to so hold would bring chapter 1080, Laws of 1926, within the prohibition of section 90 of the state Constitution, and both of them within the prohibition of section 170 of the state Constitution, under which the legislature is without power to create a special road district of the character of the one here in question, but can only regulate the manner in which such districts may be created by boards of supervisors. Moreover, to apply these statutes here as a legislative creation of the district would give them a retroactive effect, and I doubt the legislature's power to give them such an effect.

I think the case is controlled by *Browning* v. *Hooper, supra,* and that the judgment of the court below should be reversed.