WALKER, et al. *v.* BOARD OF SUPERVISORS OF MONROE COUNTY, MISSISSIPPI.

No. 39819          June 13, 1955          81 So. 2d 225

*Fred B. Smith,* Ripley; *Richard B. Booth,* Aberdeen, for appellants.

*Green, Green & Cheney,* Jackson, for appellants.

*Thomas Fite Paine,* Aberdeen; *Wm. A. Bacon,* Jackson, for appellee.

McGehee, C. J.

This is a proceeding to validate $498,600.00 of 1954 Road and Bridge Bonds of Monroe County, Mississippi, issued under Senate Bill 1756 approved May 4, 1954, (Chapter 524, Local and Private Laws of 1954) entitled "An Act authorizing the board of supervisors of Monroe County, Mississippi, to issue bonds in an amount not exceeding $500,000.00 for the purpose of constructing, reconstructing, and maintaining the roads and bridges of said county; prescribing the form and terms of such bonds; and providing the method of repayment."

The authority of the appellants Allen Aiken Walker and others to have appeared in the chancery court to contest the validation of the bonds is not challenged.

While the title of this Act does not so disclose, Section 9 thereof provides that "an excise tax of not exceeding one cent (1) per gallon, in addition to any such tax levied

and collected by the State in Monroe County, for the distribution of gasoline, may be collected for the benefit of said county, such collection to be made at the time and in the manner provided for the collection of the gasoline tax generally, and sums received from such tax shall be remitted by the Motor Vehicle Comptroller to the county at the same time as is remitted the amount due to the county out of the regular gasoline tax. The additional funds so derived shall be applied exclusively to paying the interest and principal on said bonds and to provide a sinking fund for retirement of same. The board of supervisors of said county, if desiring to collect said tax, shall enter an order on its minutes levying such tax, * * * ''

It is important here to note that there is no provision in the Act about this excise tax not applying to gasoline ''purchased and used for agricultural, maritime, industrial or domestic purposes,'' hereinafter discussed.

On July 13, 1954, the board of supervisors adopted its resolution declaring the intention of the board to issue the said amount of ''road and bridge bonds authorized by Senate Bill 1756, Local and Private Laws 1954, for the purpose of constructing, reconstructing and building roads and bridges of said county, including the bridge or bridges over a river or stream forming part of the boundary line of Monroe County''.

This resolution set out the form of notice to the qualified electors of the county, to be published in the local newspapers for the time required by law, giving notice that on August 7, 1954, the board would direct the issuance of such bonds, for the construction, reconstruction and building of the several road and bridge projects therein set forth, unless twenty percent of the qualified electors of the county should file their written protest against the issuance of the bonds on or before the 6th day of August, 1954, and in which event an election would be held to determine the question of whether or not such bonds should be issued.

The resolution contained the further provision that "it is not the desire of the board of supervisors for any tax to be imposed on gasoline to include any tax on refund gasoline *sold to farmers,* and that the board intends to seek an amendment to Senate Bill 1756 to that end and purpose". (Italics ours).

Thereafter the Board duly adjudicated on its minutes that 115 petitions containing an estimated 2,383 signatures, being the names of more than twenty percent of the qualified electors, had been filed protesting the issuance of said bonds. Therefore an election was called on the question, to be held on the 14th day of September, 1954. The notice to the qualified electors of the election recited that "said bond issue is proposed to be financed by an excise tax not exceeding one cent per gallon on gasoline sold in Monroe County, Mississippi, * * * and in the event this excise tax not exceeding one cent a gallon on the gasoline is not sufficient to meet the annual interest and the bonds as they mature annually, a special tax sufficient to provide for the payment of the interest on said bonds and the principal of said bonds shall be levied on all taxable property in Monroe County, Mississippi". Nothing was said in the notice of the election about an exemption from this gasoline tax of gasoline "purchased and used for agricultural, maritime, industrial or domestic purposes". It is stipulated in the record that the "refund" gasoline tax of one cent per gallon for gasoline purchased and used for said purposes out of the seven cents per gallon levied by the State under general law amounted to:

"Fiscal year, July, 1950 through June, 1951...$15,265.03
Fiscal year, July, 1951 through June, 1952...$20,433.31
Fiscal year, July, 1952 through June, 1953...$19,711.12."

After the election was held on September 14, 1954, and had carried by 52 votes over the required three-fifths majority of those voting in the election, the legislature at its extraordinary session of 1954 by Senate Bill 1222, approved on September 17, 1954, amended Section 9 of

Senate Bill 1756 so as to exempt and exclude from the payment of this excise tax in Monroe County all gasoline purchased and used for agricultural, maritime, industrial or domestic purposes. Therefore the subsequent resolutions and orders of the board of supervisors declaring the result of the election and providing for the issuance and sale of the bonds, and prescribing the form of the bonds, undertook to exempt from the excise tax of one cent per gallon on the gasoline sold and distributed in Monroe County such gasoline as was purchased and used for said purposes, contrary to the notice to the qualified electors which had been published prior to the election on September 14, 1954. The trial court held that this was not a material change from the question voted on in the election, although the exemption was to run throughout the life of the bonds, and although the original resolution of the board of supervisors in regard to the proposed issuance of the bonds had stated only that it was not the desire of the board that the excise tax on gasoline should be imposed on "refund" gasoline "sold to farmers", saying nothing about whether or not it was the desire of the board to exempt such gasoline as was purchased and used for industrial, maritime or domestic purposes, and although the notice of the election said nothing about an exemption of any gasoline sold or distributed in the county.

Section 8 of Senate Bill 1756 — a purely local or special law — provided that: "Said bonds, when issued, shall be the direct obligations of said county, and the full faith, credit, and resources of Monroe County shall be irrevocably pledged for the payment thereof. It shall be the duty of the board of supervisors annually to levy upon all taxable property within said county a special tax sufficient to provide for the payment of the interest on said bonds as it accrues and the principal of said bond as it matures; provided, however, that if any other funds should be or become available and be appropriated by the board of supervisors for the aforesaid

purposes, or if the gasoline tax provided in section 9 of this act should be levied and be appropriated by the board of supervisors for the aforesaid purposes, then and in that event the amount of special taxes to be levied under this section may be correspondingly reduced.''

Moreover, the resolution or order of the board of supervisors providing for the holding of the election stated that the ballots used in such election shall have printed thereon the following brief statement of the amount and purpose of the proposed bond issue, to-wit: ''The issuance of $498,600.00 road and bridge bonds for the purpose of constructing and reconstructing and building the roads and bridges of said county, to be financed by the levy of an excise tax not exceeding 1¢ a gallon on gasoline sold in Monroe County, Mississippi, and by levying upon all taxable property within said county, a special tax sufficient to provide for the payment of interest on said bonds and principal of said bond *in the event* of the excise tax of not exceeding 1¢ per gallon on gasoline *is not sufficient* to meet the annual interest on such bond and such bonds as will mature annually.''

The bonds proposed to be validated, the form of which is set out in the order of the board made and entered subsequent to the election providing for the issuance and sale of the bonds, contain a provision on the face of the form of each bond as follows: ''This bond and the issuance of which it is one constitutes a lien upon all the taxable property in Monroe County, Mississippi and the board of supervisors of Monroe County, Mississippi shall annually levy a special tax upon all such property sufficient to pay the principal and interest of said bonds as they fall due; provided, however, that if any other funds shall be or become available and be appropriated by the board of supervisors for the aforesaid purposes or if the gasoline tax provided in Section 9 of Senate Bill 1756 of the laws of the State of Mississippi of 1954 as amended, amounting to one cent per gallon on all gasoline in addition to any such tax levied and collected by

the State in Monroe County, Mississippi for the distribution of gasoline, but this tax not to be collected from gasoline purchased and used for agricultural, maritime, industrial or domestic purposes, not used in operating motor vehicles on the public roads, streets and highways of this state, which gasoline being known as refund gasoline and such refund gasoline being entirely excluded and exempt from all provisions in Senate Bill 1756 as amended.''

It will be observed that in the above quotation the sentence is incomplete, following the semi-colon therein.

However, the resolution or order of the board contains a provision, immediately following the form of the bond copied therein, to the effect that the full faith, credit, and resources of Monroe County, Mississippi, are hereby irrevocably pledged and said bonds when and as issued shall constitute a lien upon all the taxable property in Monroe County, Mississippi, and the board of supervisors shall annually levy a special tax on all such property *sufficient* to pay the principal and interest of such bonds as they fall due. And shall annually levy an excise tax of not exceeding one cent per gallon in addition to any such tax levied and collected by the state in Monroe County, Mississippi, for the distribution of gasoline, but exempting that purchased or used for agricultural, maritime, industrial or domestic purposes, whereas the resolutions and orders of the board prior to the election, including the statement on the ballots used in the election, provided that the bonds were to be financed by the excise tax on gasoline, and that *in the event* the same *is not sufficient* to meet the annual interest and the bonds as they mature annually, a special (ad valorem) tax sufficient to provide for the payment of the interest on the bonds and the principal of said bonds shall be levied on all taxable property in Monroe County, Mississippi.

In other words, according to the statement on the ballots used in the election and in the notice of the election, the voters were informed that the excise tax not exceed-

ing one cent a gallon on gasoline sold in Monroe County, was to be the primary source for the payment of the interest and the principal of the bonds, and that the ad valorem tax on all of the taxable property of the county was to be levied only in the event this excise tax was not sufficent to meet the annual interest and the payment of the bonds as they mature annually.

It would seem that Section 8 of Senate Bill 1756, and which act was the controlling statute at the time the election was held on September 14, 1954, after pledging the full faith, credit, and resources of Monroe County to the **payment of the bonds in question, makes it the mandatory duty of the board of supervisors of said county to** levy annually upon all taxable property within said county a special (ad valorem) tax sufficient to provide for the payment of the interest on the bonds as it accrues and the principal of said bonds as it matures; provided, however, that if the gasoline tax provided in Section 9 of the Act should be levied and appropriated by the board of supervisors for the aforesaid purposes, then in that event the amount of special (ad valorem) taxes to be levied under that section may be correspondingly reduced. Section 9 of the Act leaves it to the discretion of the board of supervisors to levy an excise tax not exceeding one cent per gallon on gasoline, in addition to any such tax levied and collected by the state in Monroe County for the distribution of gasoline, and that in the event the board of supervisors of said county, "if desiring to collect said tax", may collect the same for the benefit of said county and apply the same exclusively to paying interest and principal on said bonds, after entering an order on its minutes and publishing the same for the time required by said section to that effect.

The excise tax on gasoline is not levied by the legislature, but the making of such a levy is delegated and left to the discretion of the board of supervisors, and this delegation of authority by the legislature is made only to Monroe County, without any attempt to assign in the

act a basis for the classification of those engaged in the business of selling or distributing gasoline in that county as distinguished from those engaged in such business in other counties of the state, and without stating any reason for allowing the ad valorem taxes in Monroe County to be reduced annually to the extent of the money collected from the excise tax as distinguished from ad valorem taxes paid in other counties.

But aside from the foregoing considerations, as to the validity of the proceedings leading up to and including the issuance of the bonds in the matter of what was submitted to the voters in the election and as to what was done under the authority of Senate Bill 1222, approved on September 17, 1954, following the election on September 14, 1954, and also as to what is sought to be done by making the excise tax the primary source of revenues for the payment of the interest and retiring the principal of the bonds in the light of Section 8 and 9 of Senate Bill 1756, approved on May 4, 1954, we are confronted with the far more serious question of whether or not the Act itself, either as originally passed or as amended on September 17, 1954 by Senate Bill 1222 — as a local or special act — can be upheld under the provisions of the State and Federal Constitutions.

In the outset, it may be observed that the only intimation in the original act that Monroe County is not similarly situated with the counties adjacent thereto and throughout the state, is that a bridge sought to be constructed with a part of the proceeds of the bond issue is "over a river or stream forming a part of the boundary line of Monroe County," a reference to which is made in Section 1 of the Act. However, the record discloses that the river referred to likewise forms a part of the boundary line of Clay and Lowndes Counties, and the Act discloses that neither Clay nor Lowndes County is authorized to levy an excise tax on gasoline, either as the primary or secondary source of revenue for building its part of a bridge. Moreover, there are numerous other

counties in the State which have rivers forming in whole or in part one of their boundaries and are therefore similarly situated with Monroe County as to this feature of the Act in question. The Big Black River forms in whole or in part the boundary line between Warren and Claiborne Counties, Warren and Hinds Counties, Yazoo and Hinds Counties, Madison and Yazoo Counties, Holmes and Attala Counties, Carroll and Attala Counties, and Webster and Choctaw Counties. And Pearl River does so between Madison and Rankin Counties, Hinds and Rankin Counties, and Copiah and Simpson Counties.

Moreover, a general law for this purpose is already in existence in Section 8431, Code of 1942, which provides, among other things: "When a bridge shall be necessary over a stream, or any other body of water which divides one county from another, * * * the boards of supervisors of all interested counties to which it may be necessary may join in the agreement for building, repairing and keeping the same; * * *"

It is contended by the appellants that the Act in question is in conflict with Section 90, par. L of the State Constitution, which is in the following language: "The legislature shall not pass local, private, or special laws in any of the following enumerated cases, but such matters shall be provided for only by general laws, viz.: * * * (L) Laying out, opening, altering, and working roads and highways; * * * ."

Counsel recognize that in the case of Robertson v. Board of Supervisors of LeFlore County, 112 Miss. 54, 72 So. 852, this Court held that Chapter 424, Laws of 1916, providing for the issuance of bonds to pay for the improvement of public roads in Leflore County, does not violate Section 90, par. L of the State Constitution, "for the reason that it does not provide for 'laying out, opening, altering and working roads and highways,' but for the raising of revenue with which to pay for the working of roads and highways, * * * ." In so holding

the Court evidently overlooked Section 7 of Chapter 424, Laws of 1916, which reads as follows:

"The proceeds arising from the issuance and sale of the bonds to be issued, as provided by this act, shall be used exclusively for the improvement of the public roads, out of stone, chert, or a combination of such material with other material, or any material equally durable, and in payment to contractors or others for work done in improving such roads, and for material necessary therefor, and for engineer's services, and such salaries and wages as may be incidental to such road improvement."

If the foregoing section of that statute in providing that the improvement of the public roads should be "out of stone, chert, or a combination of such material with other material, or any material equally durable," and in providing for the "payment to contractors or others for work done in improving such roads, and for material necessary therefor, and for engineer's services, and such salaries and wages as may be incidental to such road improvement" is not "providing" for working roads and highways, then it is inconceivable how Section 90 par. (L), declaring that "The legislature shall not pass local, private or special laws" providing for "working roads and highways" could ever be violated by a local or special law.

The case of Memphis & C. Ry. Co. v. Bullen, 154 Miss. 536, 121 So. 826, relied on by the appellee does, in the opinion on Suggestion of Error, cite the case of Robertson v. Leflore County, supra, on the question of whether Section 90, par. (L) of the Constitution was being violated by Chapter 1080, of the Validation Acts of 1926, but the writer of the opinion evidently likewise overlooked Section 7 of Chapter 424, Laws of 1916, and merely based the holding on the one paragraph opinion rendered in the said case of Robertson v. Leflore County. The Court in the case of Memphis & C. Ry. Co. v. Bullen, supra, dealt with Chapter 278, Laws of 1926, a general law, and with Chapter 1080 of the Local and Private

Laws of 1926, the first of which statutes was a general validation act of the creation of road districts throughout the state and the issuance of bonds thereof, and the latter statute was one to validate the organization of a particular road district in Tishomingo County by a local or special act. The latter statute validated the creation of the road district, confirming its boundaries, as organized under the provisions of Chapter 277 of the Laws of 1920, which was a general law, and authorized the board of supervisors to issue additional bonds for road purposes "in the manner provided by the general laws of Mississippi" as a continuing district. We do not think that the decision in that case has such application as to be controlling on the issue of whether or not Senate Bill 1756 of the Laws of 1954, as amended, violates Section 90, Par. (L) of the State Constitution. As to the general statute there involved, Chapter 278, Laws of 1926, the first syllabus states that this curative act is "held to have validated road district bonds, without regard to constitutionality of law under which they were issued." The Act now before us is not a curative act, and it is not contended that the $498,600 of bonds here involved should be validated without regard to the constitutionality of Senate Bill 1756 of the Regular Session of 1954 as amended by Senate Bill 1222 of the Laws of the Extraordinary Session of 1954.

Counsel for appellants contend the decision in the case of Robertson v. Leflore County, supra, is unsound in that it undertakes to differentiate between the method of working roads and highways, and the means of doing so; that the means is an essential part of the method; that the Constitution does not state that the *method* only of working roads shall not be provided for by local law, but that it provides that the *working* of the roads shall not be so provided for; that the word "provide" is the key word in this constitutional provision, that is, the working of roads can only be provided for by general law; and that the most essential feature in the "pro-

viding'' for laying out, opening, altering and working roads and highways, is to "provide" the money with which it is to be done. Counsel are supported in this contention by the subsequent case of Lang v. Board of Supervisors, 114 Miss. 341, 75 So. 126, cited in the Code under Section 90 of the Constitution, which held that a statute providing for additional method of working public roads and for the issuance of bonds therefor, being applicable throughout the state, was not unconstitutional. In the opinion in that case, although the sufficiency of the title of an Act was one of the main points at issue, the Court made an observation which is very pertinent here when it said: "Necessarily to provide additional methods for working public roads it is necessary to provide appropriate means of accomplishing a proper working of public roads. To work public roads it is necessary to provide a scheme of procuring the money necessary, as roads cannot be worked without having the necessary labor and materials to work them. If money must be raised, then the methods of raising the money, including the power of taxation and the issue of bonds, would be an appropriate incident to the plan." In that case the Court said: "Section 90, par. (L), is not applicable to this law (Chapter 172, Laws 1916) *because the law is in no sense a local law, but applies throughout the state,* * * * ." (Italics ours).

In the matter of the issuance of the $498,600.00 bonds in the instant case the original resolution of the board of supervisors stated that they were proceeding under said Senate Bill 1756 and it was provided in the notice set forth in said resolution, and which was ordered to be published, that the proceeds of the bonds were to be used for the construction of two designated bridges, not exceeding a cost to Monroe County of $144,600 in one instance and not to exceed $50,000 in the other, and for the constructing of a certain road, including "hard surface paving," and for the construction of numerous other roads and bridges, not to exceed in cost the designated

sums of money for each project therein set forth. These several projects were enumerated in the original resolution of July 13, 1954, declaring the intention of the board of supervisors to issue the bonds in the amount above mentioned unless at least twenty percent of the qualified electors should protest the issuance thereof for the purposes stated in the resolution, and in which event the election was to be held.

If this did not constitute "providing" for the working of roads and highways, then the issuance of bonds for building school houses, lighting and heating the same, employing teachers to teach the educable children of a school district, and for purchasing school buses and employing drivers to transport children to school would not be to "provide" for the education of school pupils. Nor would raising money for building a church, lighting and heating the same, and engaging the services of a minister of the gospel to preach in the church amount to providing for religious worship. The first step in the matter of providing for the working of roads and highways is the issuance and sale of bonds to provide the funds with which to pay engineers, employ contractors who in turn engage the services of laborers and purchase the necessary materials for the construction of the roads with such portion of the proceeds of the bond issue as is paid to the contractors for the work provided for; such is to provide for the working of the roads and highways.

The provision of the Act in Section 11 authorizes the board of supervisors to enter into an agreement with the state highway department for the purpose of providing sufficient funds with which the highway department "may do all things necessary toward constructing and reconstructing roads and bridges in accordance with highway department specifications for construction and reconstruction, preparatory to the state highway department taking over said roads and bridges for state maintenance." This Court has held that a bridge is a link of the road or highway on which it is

located. The act, in our opinion, has the effect, for all of the foregoing reasons, of providing for working roads and highways by local or special law contrary to Section 90, par. (L), of our State Constitution.

The Fourteenth Amendment to the Constitution of the United States provides, among other things, that: "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state * * * ; * * * deny to any person *within its jurisdiction* the equal protection of the laws." (Italics ours).

In 12 Am. Jur., Constitutional Law, Section 469, it is said, among other things: "It has been repeatedly said that the guaranty of the equal protection of the laws means that no person or class of persons shall be denied the same protection of the laws which is enjoyed by other persons or other classes in like circumstances in their lives, liberty, and property, and in pursuit of happiness. It has frequently been stated that 'the equal protection of the laws is a pledge of the protection of equal laws.' One court has added the concept that it means equality of opportunity to all in like circumstances. The guiding principle most often stated by the courts is that this constitutional guaranty requires that all persons shall be treated alike, under like circumstances and conditions, both in the privileges conferred and in the liabilities imposed."

Under the requirement of equal protection of the law, it will be noted that the state may not deny to any person "within its jurisdiction" the equal protection of the law. Therefore the appellants and all those similarly situated in the State of Mississippi are within the jurisdiction of this state, and the question is not whether the Act now before us would apply equally to all persons in Monroe County similarly situated with the appellants, but rather whether it denies appellants the protection of the law enjoyed by all other persons similarly situated in the State as a whole, without a basis for classification.

The only instance of an excise tax being levied on gasoline, in addition to the seven cents per gallon levied by the state, that we now recall is the excise tax on gasoline provided for by general law, Chapter 319, Laws of 1924, for the building and maintenance of a seawall by all the counties which touch or join any body of tidewater. That statute applies to all counties similarly situated as a class, and where the tax was deemed necessary for the protection of the water front from storms, caving banks, overflow and other like dangers.

It is stipulated in the record, in accordance with what is a matter of common knowledge, that prior to the enactment by the legislature of Senate Bill 1756 the only general method of raising and procuring funds for constructing, reconstructing and maintaining the roads and bridges of each and every county in the State of Mississippi was by the levy and collection of ad valorem taxes on the property within each county, supplemented by the distribution of the portion of the statewide seven cents per gallon gasoline excise tax collected under the provisions of Article 2, Title 40, Chapter 1 of Vol. 7A Recompiled of the Code of 1942 Annotated, and supplemented by each county's pro rata portion of the statewide automobile and truck road and bridge privilege taxes. And it is further stipulated that various other counties of the state have issued and now have outstanding road bonds issued and sold under the general statutes of the state, including Chapter 241, Laws of 1950, (Section 2926-0, et seq., Supplement to Code of 1942) and that such bonds are paid by ad valorem taxation. In other words, the Act here in question does not authorize any county other than Monroe County to levy a gasoline tax for the purpose of paying the interest on road bonds and the bonds as they mature.

A serious objection to the act here in question is that it seeks to adopt a new formula for levying a tax whereby the taxing authorities may impose on a small group in a county the primary burden of paying for improve-

ments enjoyed by all of the citizens thereof, contrary to the general policy throughout the state of paying for such improvements by ad valorem taxation; that is to say, to inaugurate a special form of a local excise tax on gasoline distributed in one county and which tax is not authorized to be levied in any other county of the state coming within the same classification. No basis for classifying Monroe County in a class to itself is set forth in the Act, and it is stipulated — as to a fact of common knowledge — that various other counties have the problem of paying interest on bonds and in paying bonds at maturity that have been issued for the construction, reconstruction and building of roads and bridges, under Chapter 241, Laws of 1950, and under prior statutes of which it is amendatory, which is a general law amply providing for the issuance and sale of bonds to be paid off by ad valorem taxes, and amply sufficient for the issuance and sale of bonds for the purpose stated in the Act here in question. Then, too, we know that as a matter of state geography there are various other counties in the state where a river forms the boundary line in whole or in part and that Section 8431, Code of 1942, amply provides by general law for the solving of the problem of building a bridge or bridges across a stream which divides one county from another.

If the legislature has the power, within the limitations of the Fourteenth Amendment to the Constitution of the United States wherein it provides that no state shall deny to any person within its jurisdiction and equal protection of the law, to authorize Monroe County to inaugurate a new type of local taxation applicable to that restricted area, such as an excise tax on the distribution of gasoline, without classification of that county being based on proper and justifiable distinctions, and to thereby discriminate against local citizens as compared to persons in other counties under the same circumstances and conditions, then it would necessarily follow that the legislature would have the constitutional

right to authorize any other county in particular to levy any of the excise taxes for local purposes which are now levied by the state, such as a local income tax, an inheritance tax, soft drink tax, tobacco tax, use tax, and various other excise taxes, under and by virtue of local or special laws, and without any reasonable basis for classifying the particular county for enjoying the benefits of such special local taxation.

Disraeli is quoted as having said that: "To establish a principle is to embalm it." To paraphrase this statement, it may be said that to establish and put into effect a new tax based on a special formula is to perpetuate it in the tax system, whether it is to be applied generally or locally. As a local or special law, the Act is wholly without precedent in this state, but if its constitutional validity should be upheld, then its lack of pride in ancestry will be more than offset by its prospects for more than a scattered few in progeny. To hold that the imposition of this 1¢ per gallon tax on the distribution of gasoline in Monroe County alone, in addition to the 7¢ per gallon gasoline tax levied by the state, is a constitutionally valid precedent, as established under a local or special law in providing for "working the roads and highways," would mean that one county after another could be authorized by local or special law to levy such an additional tax to provide for the working of roads and highways not only in violation of Section 90 (L) of the State Constitution, but also in violation of the equal protection of the law clause of the Fourteenth Amendment to the Constitution of the United States if it is to be done without regard to whether or not the authority granted by the legislature to do so is based on any reasonable or just classification.

It is stated in 11 Am. Jur., Taxation, Section 184, page 245, that: "It seems clear that a statute imposing an excise or privilege tax which is applicable only in some of the political subdivisions of the state, apparently selected without any consideration as to their size, loca-

tion, or other reasonable differences from the other political subdivisions of the state, is invalid as involving an arbitrary and illegal classification."

It is stated in 12 Am. Jur., Constitutional Law, Section 481, p. 151 to 156, that: "The general rule is well settled by unanimity of the authorities that a classification to be valid must rest upon material differences between the persons included in it and those excluded and, furthermore, must be based upon substantial distinctions. * * * Therefore, any law that is made applicable to one class of citizens only must be based on some substantial difference between the situation of that class and other individuals to which it does not apply and must rest on some reason on which it can be defended."

It is further stated in this text that: "The precept most often employed states that a classification to be valid must always rest on a difference which bears a fair, substantial, natural, reasonable and just relation to the object, act, or persons in respect to which it is proposed." The rule is similarly stated in 16 C. J. S., Sec. 520, pp. 1044 and 1045.

In Murray v. Lehman, 61 Miss. 283, in discussing the constitutional rule of equality and uniformity of taxation throughout the state, and while recognizing that the tax involved was not on property, the Court said: "This rule requires that persons in the same class and property and rights of the same kind shall generally be subjected alike to the same common burden. There must not be local exactions, except for peculiar local advantage."

In the case of Adams v. Standard Oil Co., 97 Miss. 879, 53 So. 692, this Court said: "It is undoubted that the power of the states to make classification of persons and property for the purposes of taxation, as well as for other purposes, is broad; but it is equally true that the mere fact of classification is not sufficient to relieve a statute from the operation of the equality clause. The classification must be based on some reasonable ground, and some real difference which bears a just

and proper relation to the object sought to be accomplished.''

This Court again subscribed to the principle stated in the foregoing texts when it held in the case of Ray Toombs, County Prosecuting Attorney, v. Sharkey, et al., 140 Miss. 676, 106 So. 274, that Chapter 211, Laws of 1924 providing greater compensation for a prosecuting attorney in counties having ''assessed valuation of twenty-five million dollars or more,'' and being ''in a levee district, where a cotton tax is imposed for levee purposes'' than in other counties having the same valuation, constitutes a local law, and violates the Constitution of 1890, Section 90; the classification having no reasonable basis. There were two counties, including that of the appellant, that came within the classification specified by the Act, but the Court held that the classification was not based on a reasonable ground for a classification. We cite this case only to show that the classification must be based on some reasonable ground which distinguishes the county or counties to which it is intended to apply from other counties in the state; that is to say, it must bear some reasonable relation to the problem involved to distinguish the county for special classification.

It is contended that the Act also violates Sections 33, 71, 90 par. (h), 112, and 170 of the State Constitution, as to which we deem it unnecessary to express an opinion. The Act contains no saving clause to provide that the fact that one section thereof may be held to be unconstitutional will not affect the remaining sections that may not contravene the Constitution. At any rate, the two separate forms of taxation provided for in the Act are so interwoven under the provisions of the Act that we have concluded that since the Act violates Section 90 (L) of the State Constitution and the equal protection of the Law clause of the Fourteenth Amendment of the Constitution of the United States, the same should be held unconstitutional as a whole; and that therefore the

proceeding for the validation of the bonds in question should be dismissed, and that a judgment should be rendered here for the appellants.

Reversed and judgment here for the appellants.

All justices concur, except *Roberds* and *Kyle, JJ.,* who took no part.